**Janice R. LACHANCE, Director, Office of Personnel Management, Petitioner,**

v.

**Larry DEVALL, Respondent,**

and

**Merit Systems Protection Board, Respondent.**

No. 98–3213.

United States Court of Appeals, Federal Circuit.

May 20, 1999.

Patricia M. McCarthy, Attorney, Com-
mercial Litigation Branch, Civil Division,

U.S. Department of Justice, of Washington, DC, argued for petitioner. With her on the brief were David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief were Lorraine Lewis, General Counsel, Steven E. Abow and Joseph E McCann, Attorneys, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Eric D. Flores, Attorney, Office of General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent, Merit Systems Protection Board. With her on the brief were Mary L. Jennings, General Counsel and Martha B. Schneider, Assistant General Counsel.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

Based on charges brought against him, the Navy removed Larry Devall from his government position. On appeal to the Merit Systems Protection Board ("Board"), the Board sustained some but not all of the charges, and independently determined a lesser penalty. The Office of Personnel Management ("OPM") petitions for review, contending that, under the Civil Service Reform Act ("CSRA" or "Reform Act"), the Board does not have such independent authority to set penalties. We agree with OPM, and vacate the Board's decision. The case is remanded to the Board, but with different instructions than those urged by OPM.

I

Larry Devall, a Maintenance Mechanic Helper, WG–5, has been employed by the Navy for over 13 years. On May 17, 1995, the Navy summoned Mr. Devall to repair some bathroom plumbing in a bachelor officer's quarters. Ms. Scarlet Evans, a Navy enlisted person, accompanied him as part of her duties to look after officers' property while workers are present. Based on Ms. Evans's report to her supervisor, the Navy alleged that Mr. Devall asked Ms. Evans on several occasions during his May 17 work assignment to come into the bathroom to assist him or to give her opinion about the needed repairs, and that while in the bathroom Mr. Devall leaned over Ms. Evans, brushed against her, and touched her buttocks in a manner that left her uncomfortable and frightened. The Navy further alleged that Mr. Devall watched television in the quarters for about 20 minutes while waiting for penetrating oil to loosen screws in the shower drain. The Navy charged Mr. Devall with sexual harassment based on the alleged incidents involving Ms. Evans, and with inattention to duty and unauthorized use of another's property based on the alleged television incident. Upon these charges the Navy exercised its disciplinary authority pursuant to 5 U.S.C. § 7513 (1994) and removed Mr. Devall.

On August 17, 1995, Mr. Devall timely appealed the Navy's removal action to the Board. Ms. Evans testified extensively at a hearing held before an administrative judge as to the circumstances pertaining to the charges brought against Mr. Devall. In an Initial Decision dated February 9, 1996, the administrative judge credited Ms. Evans's testimony and thereby sustained the Navy's sexual harassment charge. However, in view of the short time period involved during which Mr. Devall was merely waiting with reasonable diligence for the penetrating oil to take effect, the administrative judge found the unauthorized use charge *de minimis* notwithstanding its technical sustainability and found the inattention to duty charge unsustainable.

The administrative judge next reviewed the removal penalty imposed by the Navy on Mr. Devall. The agency's deciding official testified that the agency considered the sexual harassment charge the primary basis for the imposed removal penalty. The administrative judge acknowledged this testimony, but nevertheless reviewed

the penalty under a standard articulated by the administrative judge as follows:

> [W]hile the agency's choice of penalty is a matter primarily committed to an agency's discretion, when some of the charges relied on by the agency are not sustained, as here, the same deference is not afforded to an agency's selection of penalty. In this situation, the Board reviews the penalty under a different standard. I must assess the circumstances to determine whether the remaining sustained charges warrant the penalty imposed and, if it does not, then determine the "maximum reasonable penalty" for the reduced charges and mitigate to that level.

*Devall v. Department of the Navy,* MSPB Docket No. DA–0752–95–0794–I–1 at 10 (Feb. 9, 1996) (quoting *Bree v. Department of Health and Human Services,* 49 M.S.P.R. 68, 72 (1991)). Notwithstanding that the Navy's table of penalties lists removal as a possible first offense penalty for discrimination against an employee on the basis of sex, after considering the evidence of record in light of the factors set forth in *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1981) ("the *Douglas* factors"),[1] the administrative judge determined that a 30–day suspension represented the maximum reasonable penalty under the circumstances.

The Navy petitioned the Board for review of the administrative judge's initial decision only with respect to the administrative judge's mitigation of the Navy's removal penalty. The Board granted the petition for review and issued a split decision in which each Board member wrote a separate opinion. *See Devall v. Department of the Navy,* 73 M.S.P.R. 500 (1997). Chairman Erdreich disagreed with the administrative judge's less deferential standard for reviewing agency penalty determinations when fewer than all of an agency's charges against an employee are sustained. Instead, he articulated a review standard that showed no deference at all. Specifically, citing *White v. United States Postal Service,* 71 M.S.P.R. 521 (1996), Chairman Erdreich stated that "[w]hen not all of the agency's charges are sustained, the Board will independently and responsibly balance the factors described in [*Douglas*], in order to determine a reasonable penalty." *Devall,* 73 M.S.P.R. at 502. Applying this standard, Chairman Erdreich affirmed the administrative judge's determination that the circumstances warranted mitigation of the Navy's penalty, but found the 30–day suspension too lenient and instituted a 90–day suspension instead. *See id.* at 504. Board Member Amador concurred with Chairman Erdreich that the proper penalty is a 90–day suspension, but reached this result under the standard of review set forth by the administrative judge. *See id.* at 509. Board Vice Chair Slavet agreed with Chairman Erdreich's statement of the proper standard of review, but in applying it found the Navy's removal penalty reasonable on the basis of the sexual harassment charge alone, and, accordingly, dissented in the result. *See id.* at 511.

OPM then petitioned the Board for reconsideration of its final decision, pursuant to 5 U.S.C. § 7703(d) (1994),[2] arguing that the decision erroneously interpreted the law in a manner that will have a substan-

---

1. 5 U.S.C. § 7513(b)(4) requires agencies taking adverse actions against their employees to indicate "the specific reasons therefor." Without "purporting to be exhaustive," the Board in *Douglas* listed 12 factors that an agency should consider in setting forth its "specific reasons." 5 MSPB 313, 5 M.S.P.R. at 305.

2. Pursuant to 5 U.S.C. § 7703(d), the Director of OPM may petition this court for discretion-

ary review of a Board decision that the Director concludes will have a substantial impact on a civil service law, rule, regulation, or policy directive. However, as was true in this case, "[i]f the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied." *Id.*

tial impact on civil service law and regulations. Specifically, OPM argued that under the Board's own precedent, the Board must "give due weight to the agency's primary discretion in matters of employee discipline and efficiency" insofar as "the Board's function is not to displace management responsibility but to assure that managerial judgment has been exercised within tolerable limits of reasonableness." *Devall v. Department of the Navy,* 77 M.S.P.R. 468, 471 (1998) (summarizing OPM's position and citing *Douglas,* 5 MSPB 313, 5 M.S.P.R. at 302). As such, the Board "exceeded its authority when it found (relying on *White*) that it could independently determine a reasonable penalty when less than all agency charges were sustained," thus placing "a significant, unwarranted burden 'upon an agency's core executive power to discipline employees.'" *Id.* (quoting OPM's statement in the Board's Reconsideration File). Instead—as when all agency charges are sustained—the Board simply should have reviewed the agency's imposed penalty for abuse of discretion by assessing whether the penalty clearly exceeded the limits of reasonableness. If so, the Board should have done no more than assess the "maximum reasonable penalty"—*i.e.,* the penalty at the outermost boundary of the range of reasonable penalties—that would have matched as closely as possible the agency's chosen penalty while still meeting the reasonableness requirement mandated by *Douglas. Id.* at 472.

The Board unanimously[3] rejected OPM's arguments on two grounds. First, the Board explained that when it sustains all of an agency's charges, according deference to the agency's penalty choice makes sense, because the penalty being reviewed is clearly the one the agency intended to impose based on those sustained charges. Not so when fewer than all of the agency's charges are sustained; in that case, the specific basis for the agency's penalty determination—the charges brought by the agency—is obliterated. In other words, the Board's decision not to sustain all of an agency's charges severs the nexus that would otherwise exist between those charges and the agency's chosen penalty based on those charges. Having "no definitive agency penalty selection to review[, application of] the 'maximum reasonable penalty' or 'abuse of discretion' standard . . . would necessarily require the Board to speculate about what the agency's penalty determination would have been and to defer to that fictional exercise of agency discretion." *Id.* (citing *White,* 71 M.S.P.R. at 526). The Board's solution: "Instead of engaging in that hypothetical exercise or prolonging the disciplinary and appeal process by remanding the case to the agency for a new determination, the Board [will] choose the more honest and expeditious course of independently and responsibly balancing the relevant *Douglas* factors to determine a reasonable penalty." *Id.* (citing *White,* 71 M.S.P.R. at 526–27).

Second, the Board contended, independent penalty selections when only some agency charges are sustained comports with the Board's view of its mitigation authority as it set forth in *Douglas,* as well as with the precedent of this court. *Douglas* stated that "[w]henever [an] agency's [penalty] action is based on multiple charges some of which are not sustained, the [Board] should *consider carefully* whether the sustained charges merited the penalty imposed by the agency." 5 MSPB 313, 5 M.S.P.R. at 308 (emphasis added). The Board insisted in its decision in this case that "this admonition to 'consider carefully' is inconsistent with the notion that the Board should simply defer to an agency's penalty selection when not all charges are sustained." *Devall,* 77

---

3. Board Member Amador, who had disagreed with the "reasonable penalty" standard advanced by Chairman Erdreich and Vice Chair Slavet in the Board's original decision, ended his term on March 1, 1997. Board Member Marshall joined the Board on November 17, 1997, participated in the Board's review of OPM's motion for reconsideration, and apparently agreed with the "reasonable penalty" standard.

M.S.P.R. at 473 (citing *White,* 71 M.S.P.R. at 525). The Board further justified its view by citing several decisions of this court as supporting the notion that when fewer than all agency charges are sustained the Board itself must "identify, balance, and analyze the relevant *Douglas* factors." *Id.* (citing *Chauvin v. Department of the Navy,* 38 F.3d 563, 567 & n. 4 (Fed.Cir.1994); *Webster v. Department of the Army,* 911 F.2d 679, 686 (Fed.Cir. 1990); *Quinton v. Department of Transportation,* 808 F.2d 826, 829 (Fed.Cir. 1986); *Kline v. Department of Transportation,* 808 F.2d 43, 45–46 (Fed.Cir.1986); *Hagmeyer v. Department of the Treasury,* 757 F.2d 1281, 1285 (Fed.Cir.1985)).

Accordingly, finding no merit in OPM's arguments, the Board "reject[ed] OPM's invitation to overrule *White* " and denied OPM's petition for reconsideration. *Devall,* 77 M.S.P.R. at 474. OPM then petitioned this court to review the Board's standard for determining the appropriate penalty due Mr. Devall on the charges sustained against him.[4] *See Lachance v. Devall,* 152 F.3d 948 (Fed.Cir.1998) (Table) (reported at 1998 WL 199677). We granted the petition, *see id.* at 1998 WL 199677 *2, and now turn to the merits of the case pursuant to our jurisdiction under 28 U.S.C. § 1295(a)(9) (1994).

## II

The parties' arguments on appeal intertwine the issue of whether the Board has the authority to determine penalties independently, when fewer than all agency charges are sustained, with the issue of how such penalty determination should proceed. We consider it prudent to separate these issues, considering in this Part and in Part III whether independent penalty determination authority exists at all, and then turning in Part IV to the ques-

tion of how the Board's mitigation authority should be exercised.

## A

■■■ OPM argues from our case law that penalty determinations are "judgment calls" within the discretion of the employing agency. *Beard v. General Serv. Admin.,* 801 F.2d 1318, 1322 (Fed.Cir.1986) (quoting *Weiss v. United States Postal Serv.,* 700 F.2d 754, 758 (1st Cir.1983)). This proposition is unassailable, for, as we have stated: "[i]t is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency." *Miguel v. Department of the Army,* 727 F.2d 1081, 1083 (Fed.Cir.1984). Accordingly, OPM points out, under the abuse of discretion standard that pertains to review of agency penalty determinations, we "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all factors." *Mings v. Department of Justice,* 813 F.2d 384, 390 (Fed.Cir.1987); *see also Beard,* 801 F.2d at 1321 ("the employing (and not the reviewing) agency is in the best position to judge the impact of employee misconduct upon the operations of the agency ..."); *Hunt v. Department of Health and Human Servs.,* 758 F.2d 608, 611 (Fed.Cir.1985) ("Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency."); *Hagmeyer v. Department of Treas.,* 757 F.2d 1281, 1284 (Fed.Cir.1985) (stating that penalty selection is "committed primarily and largely to the discretion of the agency" unless "the severity appears totally unwarranted").

Allowing the Board to usurp an agency's authority to set penalties when fewer than all agency charges have been sustained would, in OPM's view, undermine the dis-

---

4. Pursuant to 5 U.S.C. § 7703(d) (1994), which requires that OPM's petition be predicated on a matter having substantial impact on the civil service, OPM takes no stand on the particular choice of penalty in this case, urging a position only as to the standard used by the Board in determining the penalty.

cretionary authority vested by Congress in the employing agencies to manage their workforces. *See Beard*, 801 F.2d at 1322 ("The conclusion that the Board is to review agency penalties under the abuse of discretion standard and not itself to determine the appropriate penalty comports with the language and purpose of the [Reform] Act and is consistent with settled principles of administrative law governing review of agency penalties.").

In any event, OPM contends, none of our decisions have ever permitted the Board to disregard entirely an agency's penalty choice and independently substitute its own. Indeed, quite to the contrary, OPM argues, when fewer than all of an agency's charges are sustained the Board must ascertain whether the agency would have imposed the same penalty given the sustained charges. *See Berube v. General Serv. Admin.*, 820 F.2d 396, 400 (Fed.Cir.1987). To hold otherwise would, in OPM's view, contravene the core principles of deference articulated by the Board itself in *Douglas* and would discourage agencies from bringing valid charges against employees for fear of losing authority to determine appropriate penalties.

### B

The Board frames this appeal as centering on the question of the scope of its mitigation authority. The Board finds an express reference to such mitigation authority in 5 U.S.C. § 7701(b)(3) (1994) (permitting the Board to mitigate adverse actions against employees in the Senior Executive Service "subject to the same standards as would apply in an appeal involving an action covered by [5 U.S.C. § 7513] with respect to which mitigation authority under this section exists"), and further points to its inheritance of such authority from the Civil Service Commission under Reorganization Plan 2 of 1978, *see Douglas*, 5 MSPB 313, 5 M.S.P.R. at 291–296, as recognized by this court in *Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1566 (Fed.Cir.1985).

The Board acknowledges that as a question of statutory interpretation the scope of its mitigation authority under section 7701(b)(3) is subject to final arbitration by the judiciary. *See FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). However, the Board argues that in view of legislative silence on the issue of scope and the reasoned, reasonable interpretation of this issue that it proffered in *White* and in its decision in this case, we must accord it interpretive deference pursuant to *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

*Chevron* deference notwithstanding, the Board further argues that our precedent has extended the Board's mitigation authority to encompass independent penalty determination, citing *Kline v. Department of Transportation*, 808 F.2d 43, 46 (Fed. Cir.1986) ("On remand the Board will determine the relevant *Douglas* factors and will consider and balance those relevant factors in determining an appropriate penalty for the sustained charge of AWOL."), *Webster v. Department of the Army*, 911 F.2d 679, 686 (Fed.Cir.1990) (affirming agency's removal penalty on sustained charges where administrative judge "found the agency had not properly considered the *Douglas* factors and therefore independently considered and discussed them himself"), *Chauvin*, 38 F.3d 563, 567 (remanding the case to the Board to "consider the relevant *Douglas* factors and determine an appropriate penalty for the sustained charge"), *Quinton v. Department of Transportation*, 808 F.2d 826, 829 ("where many of the original charges are not sustained below, we will scrutinize carefully the appropriateness of the penalty imposed"), and *Hagmeyer*, 757 F.2d 1281, 1285 ("We reverse the Board and remand the case for the determination of a lesser penalty.").

According to the Board, neither *Beard* nor *Mings* mandates otherwise. *Beard*, argues the Board, did not concern a case

where fewer than all of the agency's charges were sustained, while in *Mings* this court merely refused to substitute its own penalty determination for that of the agency; it did not prevent the Board from doing so. Nor could this court have done so, the Board insists, because in its view 5 U.S.C. § 7701(c) provides for de novo review of agency findings by the Board whereas section 7703(c) provides for only record review of the Board's findings by this court, thus indicating that the Board's standard of review of agency penalties is broader than this court's.

As to OPM's recourse to *Berube*, the Board points out that Congress expressly overruled *Berube* in the Senior Executive Service Improvements Act of 1991, which by amendment of 5 U.S.C. § 7701(b)(3) explicitly accorded the Board mitigation authority in its review of penalties imposed on members of the Senior Executive Service. *See* 5 U.S.C. § 7701(b)(3) (1994); 137 Cong. Rec. H9630–02, *H9632 (102 Cong., 1st Session, 1991) ("The court held [in *Berube* ] that MSPB cannot review whether a particular penalty is appropriate in SES misconduct cases.... It is the committee's intent to correct this anomaly and allow the MSPB to mitigate penalties in misconduct cases."). The Board opines that this amendment suggests that Congress intended the Board's mitigation authority to extend to independent penalty determinations when fewer than all agency charges are maintained.

Finally, in cases where fewer than all agency charges are sustained the Board considers independent penalty assessment the more reasonable, the more efficient, and indeed the only statutorily consistent route to "final [agency] action" pursuant to 5 U.S.C. § 1204(a)(1) (1994).[5] In any event, the Board finds OPM's policy argument that such independent Board determinations would chill agencies' incentive to bring valid charges against their employees groundless in view of the Board's experience that agencies carefully exercise their disciplinary responsibilities by only bringing charges they believe they can prove, and the Board's belief that they would not cease to do so merely because on occasion the penalties associated with such charges may be overturned without regard for agency discretion.

## III

We agree that the proper statutory interpretation of the Board's mitigation authority pursuant to 5 U.S.C. § 7701(c)(3) (1994) frames the issue to be decided in this appeal. However, we disagree that we have filled previously the portion of the canvas actually in issue here, namely, whether the Board's mitigation authority extends to encompass independent determination authority when the Board reviews agency penalties imposed pursuant to 5 U.S.C. § 7513.[6]

## A

The Board insists that we must defer to its interpretation of section 7701(c)(3) as so extending its mitigation authority. If the Board's interpretation qualifies for *Chev-*

---

**5.** 5 U.S.C. § 1204. **Powers and functions of the Merit Systems Protection Board.**

 (a) The Merit Systems Protection Board shall—

 (1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, chapter 43 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter[.]

**6.** An agency may impose penalties on ordinary civil service employees such as Mr. De-

vall pursuant to either chapter 75 or chapter 43 of title 5, United States Code. Chapter 75 covers agency actions based on employee misconduct, with sections 7512 and 7513 covering less and more egregious misconduct respectively. Chapter 43 covers agency actions based on unacceptable performance. We previously have held that the Board has no mitigation authority with respect to agency actions taken pursuant to chapter 43. *See Lisiecki v. Merit Sys. Protection Bd.,* 769 F.2d 1558, 1568 (Fed.Cir.1985).

*ron* deference, our inquiry is at an end. We therefore consider first whether such deference is due.

In *Lovshin v. Department of the Navy*, 767 F.2d 826, 840 (Fed.Cir.1985) (in banc) we acknowledged "that deference is appropriately given to the MSPB's interpretation of the CSRA" insofar as "Congress has vested the MSPB with substantial responsibility for enforcing the [Reform] Act." However, we concluded in *Lovshin* that notwithstanding such deference "the basis for the MSPB's interpretation [was] fatally flawed" in view of the statutory design at issue in that case. We have since pointed out that "[w]hen an agency's interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference." *Muwwakkil v. Office of Personnel Mgmt.*, 18 F.3d 921, 925 (Fed.Cir.1994) (citing *Chevron*, 467 U.S. at 845, 104 S.Ct. 2778); *see also FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) ("[T]he courts are the final authorities on statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement."); *King v. Jerome*, 42 F.3d 1371, 1374 (Fed.Cir.1994) (stating that "we owe the board's statutory interpretation no deference" when we believe its interpretation is contrary to congressional intent) (citing *Muwwakkil*, 18 F.3d at 925).

■ The Senate report on the CSRA [7] concludes its introductory remarks in the section entitled "The Need for Reform" by summarizing the dichotomous nature of the Reform Act as attempting to accomplish simultaneously two facets of its central objective:

> The public has a right to an efficient and effective Government, which is responsive to their needs as perceived by elected officials. At the same time, the public has a right to a Government which is impartially administered. One of the central tasks of the civil service reform bill is simple to express but difficult to achieve: Allow civil servants to be able to be hired and fired more easily, but for the right reasons. This balanced bill should help to accomplish that objective. It is an important step toward making the Government more efficient and more accountable to the American people.

S.Rep. No. 95–969 at 4, *reprinted in* 1978 U.S.C.C.A.N. 2723, 2726. Thus, on the one hand, the Reform Act strives to enable government managers to more effectively hire, fire, and otherwise discipline their employees, while at the same time according employees their requisite procedural protections. *See Lisiecki*, 769 F.2d at 1562.

At the core of its plan to achieve these dual objectives, the Reform Act dissolved the old Civil Service Commission, and in its stead created two separate, distinct, and independent bodies—OPM and the Board—in recognition of the problems inherent in having a single authority serve as judge in its own case. As pointed out in the Senate Report,

> Under current law, the responsibility for personnel management is combined with the responsibility for overseeing and protecting the merit system; both responsibilities are vested in the Civil Service Commission. This legislation provides for the separation of functions now administered by the Civil Service

---

7. Our previous remarks in *Lisiecki v. Merit Sys. Protection Bd.*, 769 F.2d 1558, 1562 (Fed. Cir.1985) regarding the legislative history of the CSRA are germane here:

> The House and Senate committee reports on the Reform Act are very similar in most of the respects material to the present case. The Senate bill, however, is the one that passed. For convenience, reference is made to some of the language in the Senate committee report to illustrate the concepts important here.

Commission into two agencies, the Office of Personnel Management and the Merit Systems Protection Board, in order to insure that those who are responsible for administering the civil service system will not have the primary responsibility of determining whether that system is free from abuse.

S.Rep. No. 95–969 at 24, *reprinted in* 1978 U.S.C.C.A.N. at 2746. Thus, separation of the managerial and oversight functions of the old Civil Service Commission forms a cornerstone of the Reform Act.

Fundamental to the managerial functions explicitly entrusted by statute to OPM—and to OPM alone—are the disciplinary powers vested in it by chapter 75 of title 5, United States Code, entitled "Adverse Actions." The statute provides that such actions may be taken "[u]nder regulations prescribed by the Office of Personnel Management" by "an agency . . . only for such cause as will promote the efficiency of the service."[8] 5 U.S.C. § 7503(a) (1994).

Whether such agency action indeed promotes efficiency of the service is within the province of the Board, but even so, pursuant to 5 U.S.C. §§ 7701(c)(1)(B) and (c)(2), the Board must sustain the agency's action under chapter 75 so long as it is supported by a preponderance of the evidence, was not undertaken through harmful procedural error, was not based on prohibited personnel practices, and was in accordance with law. Such a standard of review comports with what we previously have characterized as "[t]he stated purpose of the Reform Act," namely, "to give agencies greater ability and flexibility to remove or to discipline employees who engage in misconduct (chapter 75) or whose work performance is unacceptable (chapter 43)." *Lisiecki,* 769 F.2d at 1563.

To be sure, pursuant to 5 U.S.C. § 1204(a)(1), the Board is empowered to "hear, adjudicate, or provide for the hearing or adjudication" of agency actions. The Board's power in this regard is vital to achieving the statutory goal of thwarting agency abuse. Further, the Board is empowered "subject to otherwise applicable provisions of law, [to] take final action on any such matter." *Id.* "Final action," as explained in the Senate Report, "constitutes final agency action for the purposes of judicial review." S.Rep. No. 95–969 at 29, *reprinted in* 1978 U.S.C.C.A.N. at 2751. That the Board, not the agency, takes final action for purposes of judicial review makes sense in further promoting the goal of preventing abuse by ensuring that agency managerial decisions may by employee right be subjected to an independent check before taking effect. As to the nature of such final action, however, the statute merely provides, under 5 U.S.C. § 7701(c), that an agency's decision "shall be sustained" or "may not be sustained" by the Board, as already discussed. Thus, other than the explicit grant of adjudicative power to sustain or reverse an agency decision, the Reform Act is silent on the permissible scope of the Board's review of such decisions. Only through the Senior Executive Service Improvements Act of 1991 do we find statutory mention of some other adjudicative power associated with Board review of chapter 75 actions, *i.e.,* mitigation authority:

> With respect to an appeal from an adverse action covered by subchapter V [pertaining to members of the Senior Executive Service] of chapter 75, authority to mitigate the personnel action involved shall be available, subject to the same standards as would apply in an appeal involving an action covered by subchapter II of chapter 75 with respect

8. OPM has the power to delegate such managerial functions as it sees fit (subject to exceptions not relevant here) to individual agencies pursuant to 5 U.S.C. § 1104(a)(2); *see also* S. Rep. 95–969 at 6, reprinted in 1978 U.S.C.C.A.N. at 2728 ("individual personnel actions will be delegated [by OPM] to the departments and agencies" while "[t]he Merit Systems Protection Board will assume principal responsibility for safeguarding merit principles and employee rights").

to which mitigation authority under this section exists.

5 U.S.C. § 7701(b)(3) (1994). As the legislative history points out, this amendment to section 7701 "extends to career appointees in the SES the same rights to Merit Systems Protection Board mitigation of unreasonable penalties in cases of removal for misconduct [*i.e.*, chapter 75 actions] as other career employees have," 137 Cong. Rec. H9630–02, *H9632 (102 Cong., 1st Session, 1991), thus overruling our decision in *Berube*.

In *Berube*, we acknowledged the Board's mitigation authority under section 7513 (governing adverse agency actions in non-SES employee misconduct cases) because of the " 'historic relationship' " between mitigation authority and the efficiency of service standard for adverse actions incorporated in that section. *See* 820 F.2d at 400 (quoting *Lisiecki*, 769 F.2d at 1566). Because section 7543 (governing adverse agency actions in SES employee misconduct cases) incorporates a misconduct standard rather than an efficiency of service standard, however, we refused to extend the Board's mitigation authority to that section. The 1991 amendment to 5 U.S.C. § 7701(b)(3) merely reverses this holding, thus extending to SES misconduct cases the same mitigation authority that we have long acknowledged governs non-SES misconduct cases. Neither the amendment nor the legislative history of the amendment say anything, however, about the scope of this mitigation authority.

The Board insists that we must find the scope of its mitigation authority under the Reform Act as extending to the point of allowing it to fashion—de novo—a penalty that ignores entirely the penalty originally imposed by the agency. In essence, the Board urges us to defer to its reading of amended section 7701(b)(3) as containing an authority not merely to mitigate, but also to create.

Such an interpretation would, however, empower the Board to act as judge in its own case, in direct conflict with the clear intent of Congress that managerial actions be exercised by one body and reviewed by another. To be sure, the Board inherited mitigation authority in misconduct actions from the old Civil Service Commission; but the extent of this inheritance must be assessed through the lens of the Reform Act itself and cannot conflict with one of its basic purposes, as the Board's interpretation would do. Accordingly, we owe no deference to the Board's interpretation of section 7701(b)(3). *See Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.") (citations omitted).

We find equally unavailing the Board's statutory argument that we must defer to its interpretation of section 7701(b)(3) because its standard for review of agency penalties in misconduct actions is broader than this court's. *Compare* 5 U.S.C. § 7701(c)(1)(B), which provides for a preponderance standard for review of agency findings by the Board, *with* 5 U.S.C. § 7703(c)(3), which provides for substantial evidence review of Board findings by this court. These statutory provisions speak to review of fact findings, not to review of the applicable law.

### B

The Board insists that our case law binds us to sanction its mitigation authority as encompassing independent penalty determination authority because we have previously so held. We disagree.

The Board makes much of its statement in *Douglas* that "[w]henever the agency's action is based on multiple charges some of which are not sustained, the presiding official should consider carefully whether the sustained charges merited the penalty imposed by the agency," 5 MSPB 313, 5 M.S.P.R. at 308, and points to several of our cases as evidence that this court has

adopted the "consider carefully" requirement. The Board opines that the phrase "consider carefully" reflects the Board's recognition that the agency has not made a determination of the appropriate penalty for only the sustained charges, and that simple deference to the imposed penalty is therefore inappropriate.

We consider it curious that the Board equates such careful consideration with abrogation of the Board's admitted responsibility "to accord proper deference to the agency's primary discretion in managing its workforce" and thus "not to insist that the balanc[ing of *Douglas* factors] be struck precisely where the Board would choose to strike it if the Board were in the agency's shoes in the first instance." *Douglas*, 5 MSPB 313, 5 M.S.P.R. at 306. We have never so equated the two, nor, before today, have we had occasion to consider the Board's view of its mitigation authority, whether under *Douglas* or *White*. While we have acknowledged that "where many of the original charges are not sustained below" the prudence of an agency-imposed penalty must be "scrutinize[d] carefully," *Quinton*, 808 F.2d at 829; *see also Hagmeyer*, 757 F.2d at 1285 (commenting that under the circumstances of the case the presiding official ought to have "carefully consider[ed]" whether the single charge retained by the agency warranted the agency's so severe a sanction), our requirement for careful scrutiny merely reflected our requirement that the Board independently *balance* the relevant *Douglas* factors with heightened sensitivity when reviewing agency penalties upon fewer charges than those brought by the agency. *See Quinton*, 808 F.2d at 829 (approving of the Board's proper independent balancing of the *Douglas* factors in affirming the agency's penalty choice after reversing some charges); *Webster v. Department of the Army*, 911 F.2d 679, 686 (Fed.Cir.1990) ("We think a fair reading of the administrative judge's lengthy opinion as a whole demonstrates 'that the presiding official identified, balanced and then considered the relevant *Douglas* factors in

determining that the sustained charge[s] warranted the penalty imposed.'") (quoting *Kline v. Department of Transportation*, 808 F.2d 43, 46 (Fed.Cir.1986)); *cf. Kline*, 808 F.2d at 46 (holding inadequate the Board's balancing of the *Douglas* factors after it sustained one of two agency charges, and remanding the case to the Board to "consider and balance those relevant factors in determining an appropriate penalty for the sustained charge of AWOL."); *Chauvin v. Department of the Navy*, 38 F.3d 563, 567 (Fed.Cir.1994) (same). These cases obviously contemplate Board authority to assess the penalty to be attached to conduct when fewer than all charges are sustained. They do not, however, address or resolve the question of whether the Board may ignore the agency's views when making such assessments. The case law, then, does not decide the issue now before us.

 That the Board always should have independent balancing authority seems manifest in view of the Reform Act's purpose in creating the Board to "determin[e] whether [the civil service] system is free from abuse." S.Rep. No. 95–969 at 24, *reprinted in* 1978 U.S.C.C.A.N. at 2476. That this balancing authority must be exercised with heightened scrutiny when the Board affirms an agency's penalty notwithstanding its reversal of some agency charges makes sense, because 5 U.S.C. § 7513(b)(4) requires agencies taking adverse actions against their employees to indicate "the specific reasons therefor," a statutory requirement consistent with the Reform Act's goal of ensuring the exercise of managerial discretion for the right reasons. When the Board agrees with the agency's penalty assessment, yet repudiates some agency charges while sustaining others, the reasons provided by the agency for taking its action necessarily fall short of the virtual exactitude implicit in the phrase "specific reasons." Absent the articulation of specific reasons, agency action is ineffective as it does not comply with

statutory requirements. To provide the requisite compliance efficiently, the Board steps in as surrogate to realign the precise correspondence between agency action and agency justification mandated by the statute. To effectuate this realignment, the Board cannot merely state that it agrees with the agency's specific reasons for the imposed penalty, however comprehensive they may be, for the exact correspondence between charges and reasons is lacking. The Board must instead itself precisely articulate the basis for upholding the agency's action. The active process inherent in the precise articulation of any justification as a matter of course requires "careful" scrutiny of the circumstances: thus, the need for, and legitimacy of, the Board's exercise of its balancing authority with aplomb.

■ Of course, if proper justification does not emerge upon this careful scrutiny, the agency's penalty cannot be sustained. In such instances, the Board may mitigate an unreasonably severe agency penalty to bring the penalty within the bounds of reasonableness. *See Lachance v. Merit Sys. Protection Bd.*, 147 F.3d 1367, 1374 (Fed.Cir.1998). We have never opined, however, that upon doing so the Board may substitute its will for the agency's by stepping beyond independent justification—a power essentially coextensive with independent review—into the realm of independent management. We have instead repeatedly emphasized the agency's exclusive domain in disciplining its employees. *See, e.g., Parker v. United States Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir.1987) ("It is well established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency."). The Board itself has cautioned against its own encroachment on this realm:

Management of the federal workforce and maintenance of discipline among its members is not the Board's function.

Any margin of discretion available to the Board in reviewing penalties must be exercised with appropriate deference to the primary discretion which has been entrusted to agency management, not to the Board. Our role in this area, as in others, is principally to assure that managerial discretion has been legitimately invoked and properly exercised.

*Douglas,* 5 MSPB 313, 5 M.S.P.R. at 300–01. As a matter of efficiency the Board may independently justify agency actions it finds warranted on independent review. It may likewise on such review independently reject those penalties it finds abusive. It may not, however, infringe upon an agency's exclusive domain as workforce manager, for to do so would frustrate the framework of the Reform Act. *See Beard,* 801 F.2d at 1322 ("The conclusion that the Board is to review agency penalties under the abuse-of-discretion standard and not itself to determine the appropriate penalty comports with the language and purpose of the [Reform] Act and is consistent with settled principles of administrative law governing review of agency penalties."). When the Board deems it necessary to mitigate an agency penalty, or when it is instructed to do so by this court, it cannot disconnect its penalty determination from the agency's managerial will.

## C

The Board argues that dispensing with agency discretion when some agency charges are reversed makes sense because upon such partial reversal the nexus between the charges brought by the agency and the penalty imposed by the agency based on those charges necessarily has been severed. Once severed, the more efficient procedure, the Board contends, is to have the Board itself determine a reasonable penalty de novo. Thus, as the Board would have it, its decision to reverse a relatively innocuous charge while sustaining 99 more egregious ones should automatically transfer to the Board, as a matter of efficiency, the unfettered discre-

tion to impose a penalty without the least regard for the agency's wishes.

We find this logic unpersuasive. When an agency brings several charges, some more and some less egregious, and the more egregious charges are sustained, it is reasonable to presume, absent agency indications to the contrary, that the agency itself would have imposed the same penalty on the basis of the sustained charges that it chose on the basis of the combined charges. The presumption is fortified, moreover, when the agency makes this clear before the Board, as in this case, where the deciding official testified to the effect that Mr. Devall's prior incidents, counseling, and awareness of the agency's policies on sexual harassment were aggravating factors that motivated his decision to remove Mr. Devall. In such cases it does not follow that the basis for the agency's penalty choice no longer exists. Thus, the Board's insistence that its decision to reverse some agency charges necessarily severs the nexus between the charges actually proved and the agency's chosen penalty is incorrect. While it is true that the Board's reversal of some agency charges severs the precise correspondence between the actually proved charges and the penalty justification therefor required by 5 U.S.C. § 7513(b)(4), the Board may cure this problem, as discussed, by providing such justification. That the Board may provide the requisite justification does not, however, imply that the Board may independently institute a new penalty. The limits on the Board's mitigation authority imposed by the structure of the Reform Act require that a nexus between the agency's penalty choice and the Board's be maintained. The vitality of this structure is paramount to whatever sacrifice in efficiency that may result from maintenance of such nexus, which in any event would never require anything more than remand to the agency for redetermination of an appropriate penalty. As we have previously pointed out, that an administrative procedure is the more efficient is of no consequence when the procedure runs

afoul of congressional will. *See King v. Jerome*, 42 F.3d 1371, 1375–76 (Fed.Cir. 1994) (holding that Board could not review agency determination notwithstanding the possible efficiency of such review because "it is not for the board to supplant the remedies Congress expressly provided or create new remedies which it believes Congress overlooked.").

## IV

■ Having established that the Board may not independently determine penalties, we now turn to the issue of the scope of the Board's mitigation authority.

OPM insists that when the Board finds an agency's penalty too severe on the charges actually sustained the Board must always mitigate to the "maximum reasonable penalty," *i.e.*, the penalty relative to the agency's that brings the agency's penalty within tolerable limits of reasonableness. *See, e.g., Davis v. Department of Treasury*, 8 MSPB 17, 8 M.S.P.R. 317, 320–21 (1981). We disagree.

As the Board correctly points out, requiring the Board to always mitigate to the maximum reasonable penalty might result in the Board's mitigating to a more severe penalty on the sustained charges than the agency would have imposed in the first instance. Such was indeed the somewhat anomalous case of *Williams v. Department of the Air Force*, 41 M.S.P.R. 173, 179 (1989), where the Board mitigated removal to a 60–day suspension and demotion as the maximum reasonable penalty, notwithstanding the deciding official's testimony that he would have imposed merely a 15–day suspension on the sustained charges. Under the framework of the Reform Act an agency cannot abdicate responsibility for managing its workforce by requiring imposition of the maximum reasonable penalty any time the Board finds the agency's penalty inappropriate. As *Williams* illustrates, uniform imposition of a maximum reasonable penalty standard would sever the required nexus between

agency and Board penalty actions as much as would allowing the Board independently to determine appropriate penalties.

We conclude that the following procedures will satisfy this required nexus: When the Board sustains all of an agency's charges the Board may mitigate the agency's original penalty to the maximum reasonable penalty when it finds the agency's original penalty too severe. When the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. Such a procedure ensures that the agency retains its authority under the Reform Act to serve as employee disciplinarian on the basis of its sustained charges: when the Board mitigates to the maximum reasonable penalty under such circumstances, the Board's action appropriately presumes that it is acting in conformity with the agency's penalty choice, either because the agency explicitly has made clear its desire that the maximum reasonable penalty be imposed or implicitly has done so by virtue of its silence. If the Board discerns from the record or the proceedings that the agency desires imposition of a lesser penalty the Board must accord the agency an opportunity to institute such a lesser penalty. The Board may do so either through remand, or through some other procedure pursuant to its rulemaking authority under 5 U.S.C. § 7701(k) that would, for example, set some reasonable time limit for the agency to redetermine a penalty on the sustained charges so as to ensure that the agency has sufficient opportunity to consider its options, while also ensuring that resolution of an employee's case is not unduly prolonged. The legality of any such procedure under the Reform Act would, of course, be subject to our review.

## CONCLUSION

The Board fulfills a vital role in ensuring that agency discretion does not lead to abuse. The vitality of this role would be compromised if the Reform Act's separation of the old Civil Service Commission's management and oversight functions were not duly preserved. Allowing the Board independently to determine penalties would result in blurring this separation, as would requiring the Board, in all instances where it concludes that mitigation is warranted, inflexibly to employ a maximum reasonable penalty standard. Accordingly, we vacate the Board's decision, and remand to the Board for further proceedings not inconsistent with this opinion.

No costs.

**VACATED AND REMANDED.**