Mario G. **MANCINI**, Jr., Petitioner,

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 00–3110.

United States Court of Appeals, Federal Circuit.

May 2, 2001.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Mario G. Mancini, Jr., is a Vocational Rehabilitation Specialist employed by the Department of Veterans Affairs ("the agency"). The agency proposed to remove Mr. Mancini from his position on the grounds that he had made a statement of a threatening nature and had engaged in conduct beyond the scope of his authority. Mr. Mancini appealed the proposed removal to the Merit Systems Protection Board ("Board"). After a hearing, an administrative judge of the Board concluded that Mr. Mancini had committed both offenses as charged, and that the penalty of removal was warranted. Mr. Mancini appealed the adverse decision by the administrative judge to the Board. The Board determined that the evidence did not prove that Mr. Mancini had made a statement of a threatening nature. However, the Board determined that substantial evidence supported the agency's charge that Mr. Mancini had engaged in conduct beyond the scope of his authority. Pursuant to *Lachance v. Devall,* 178 F.3d 1246 (Fed.Cir. 1999), the Board mitigated the penalty of removal to a maximum reasonable penalty of 30–day suspension for the sustained offense. Mr. Mancini seeks review of the final decision of the Board. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994). We *reverse* and *remand.*

I

Mr. Mancini's job as a Vocational Rehabilitation Specialist involves him with the Compensated Work Therapy program, in which Veterans Administration ("VA") patients work, as part of their rehabilitation, for other agencies or private companies under contract with the VA Medical Center for which Mr. Mancini works. The VA Medical Center has a contract with, among others, the National Archives in Dayton, Ohio, pursuant to which the VA supplies patients who work at the National Archives site.

On February 10, 1997, Mr. Mancini removed five patient-workers from a large crew of similar workers who were then unloading trucks at the National Archives site. Mr. Mancini transferred those five

workers to a different work site for a different employer. Mr. Mancini admitted that he indeed had removed the five workers to the other site, where they would earn approximately five dollars per hour more than at the National Archives site.

On March 7, 1997, the agency formally charged Mr. Mancini for acting beyond the scope of his authority in connection with the February 10 event. The formal charge cited the contract between the VA Medical Center and the National Archives, and stated that Mr. Mancini had no responsibility for that contract. The charge further stated that on February 10, the charging officer, Dr. O'Brien, received a call from a site supervisor at the National Archives, Mr. Lloyd Mitchell, in which Mr. Mitchell stated that Mr. Mancini had removed five of the best workers from the site, without contacting the site supervisor or providing any reason for the removal of the workers. As a result of Mr. Mancini's action, the site supervisor informed Dr. O'Brien that the remaining work crew would be unable to perform the job function. According to the charging officer, Mr. Mancini's action, because he had no responsibility for the National Archives contract, was "well beyond the scope of [petitioner's] authority and responsibility," and "placed the Medical Center in the position of breaching [the agency's] contract with the National Archives."

## II

At the hearing before the administrative judge, two documents were introduced to support the formal charge of the agency that Mr. Mancini had acted beyond the scope of his authority. Dr. O'Brien had memorialized his telephone conversation with Mr. Mitchell in writing on a form entitled "Report of Contact." The writing related the substance of the call from Mr. Mitchell to Dr. O'Brien on February 10.

It states that Dr. O'Brien told Mr. Mitchell that "Mr. Mancini is not responsible for this contract," and that Dr. O'Brien apologized for Mr. Mancini's action, saying that he, Dr. O'Brien, "could not see any justification" for Mr. Mancini's action.

The second document introduced at the hearing is another "Report of Contact," this one signed by Pamela Batchelor. That writing memorialized a call from Mr. Mitchell to Ms. Batchelor, in which Mr. Mitchell complained about Mr. Mancini's action, and stated that the action left insufficient available personnel to perform the work called for by the contract. Mr. Mitchell stated that he hoped to continue the contract with the VA Medical Center, but that he did not know what would happen, given Mr. Mancini's action, when he, Mr. Mitchell, reported the incident to his Board of Directors.

At the hearing, the primary focus of attention was on the evidence submitted by the agency and by Mr. Mancini on the charge of making a statement of a threatening nature. Although the agency produced Dr. O'Brien to testify about the alleged threat Mr. Mancini had made, the agency did not ask Dr. O'Brien to testify about the extent of Mr. Mancini's authority with regard to the National Archives contract.

On direct examination by the agency, Dr. O'Brien credited Mr. Mancini with having developed the Compensated Work Therapy ("CWP") program, pursuant to which the National Archives and other contracts were performed. According to Dr. O'Brien, Mr. Mancini's assignments concerning the CWP program included provision of "a full range of vocational services from assessment all the way on through job placement to Veterans on the PTSD unit." Hearing Transcript at 26. Further, Dr. O'Brien testified that Mr. Mancini was responsible for the reporting

of time worked by the veterans employed under the various contracts. Hearing Transcript at 35.

At the close of the agency's case, Mr. Mancini moved to have the charge of lack of authority dismissed for want of sufficient proof to sustain the charge by a preponderance of the evidence. The administrative judge denied the motion, thus compelling Mr. Mancini to counter the two items of documentary evidence introduced by the agency to support its charge of lack of authority over the National Archives contract.

Mr. Mancini introduced exhibits 12 and 13, which are the agency's contracts with the National Archives, and testified that he had signed those agreements on behalf of the agency. Although the agency charged that Mr. Mancini lacked any authority over those contracts, the agency did not cross-examine Mr. Mancini after he testified that he had entered into the contracts on behalf of the agency. Hearing Transcript at 133. Mr. Mancini was asked by his counsel, at the hearing, "did you have the authority to transfer those workers from one job site to another?" He answered: "Well, I never had anybody tell me I couldn't. That's what I've done historically." Hearing Transcript at 105. When asked if anyone had expressed anger at Mr. Mancini's removal of the workers from the National Archives site, he replied, "No." *Id.* Mr. Mancini also testified that he communicated with Dennis McCoscus, the director of the National Archives in Dayton for whom Mr. Mitchell worked as a subordinate. Mr. Mancini testified that he had received compliments from Mr. McCoscus before February 10 about the agency's performance of the National Archives contract, and that Mr. McCoscus had said nothing to him, after February 10, about "any problem as a consequence of [his] removing these workers." Hearing Transcript

at 106. According to Mr. Mancini's testimony, Mr. McCoscus "had nothing but good things to say about the Veterans and my work behaviors." *Id.* When again asked if anyone had ever told him that he lacked authority to make decisions regarding the placement of workers, Mr. Mancini replied, "Never." Hearing Transcript at 108.

As we noted above, the administrative judge, on the record we have described, sustained the charge of lack of authority, as did the full Board. The penalty of 30–day suspension rests on the full Board's conclusion that substantial evidence supports the proof of the charge by a preponderance of the evidence.

### III

The agency of course must prove its case before the Board by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(ii) (2000). The Board defines "preponderance of the evidence" as follows:

> Preponderance of the evidence. The degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.

5 C.F.R. § 1201.56(c)(2). We cannot sustain the Board's final judgment if we determine that substantial evidence does not support its conclusion that the agency has proven its case by a preponderance of the evidence. 5 U.S.C. § 7703(c) (1994).

The charge here is that Mr. Mancini acted beyond his authority when he took action concerning the National Archives contract. In support of the charge are the two documents introduced by the agency, only one of which (Dr. O'Brien's statement) is pertinent to the question of whether Mr. Mancini had any authority to take action concerning the National Ar-

chives contract. In addition to that one piece of documentary evidence, the formal charge itself, in which Dr. O'Brien catalogued the reasons for Mr. Mancini's proposed removal, also alleged that Mr. Mancini had no responsibility for the National Archives contract. The question for us is whether substantial evidence supports the Board's conclusion that the agency's evidence met the test of preponderance. In other words, on the contested fact of whether Mr. Mancini had any authority to act regarding the National Archives contract, in light of Mr. Mancini's uncontested testimony that he did not lack authority, is there substantial evidence to support the Board's conclusion that the agency's contention is more likely true than untrue?

The facts are undisputed that Mr. Mancini entered into the National Archives contract on behalf of the agency, and that he had an ongoing relationship with the director of the National Archives, the person for whom Mr. Mitchell worked. An inference must necessarily be drawn from the fact that Mr. Mancini had an ongoing relationship with the director that Mr. Mancini had some official responsibilities concerning the performance of the National Archives contract. The director never complained to Mr. Mancini about the February 10 event, and indeed had not complained at all about the performance by the agency of the National Archives contract. It is also undisputed that Mr. Mancini has historically had the authority to transfer workers from one work site to another.

When the evidence pointing to some authority of Mr. Mancini to act regarding the National Archives contract is compared to the bare allegation by Dr. O'Brien that Mr. Mancini had "no responsibility for our contract with the National Archives," we think the agency's evidence fails to clear the preponderance hurdle. Given the un-disputed fact that Mr. Mancini had some official relationship with performance of the National Archives contract, on the agency's evidence alone, it cannot be more likely true than not that Mr. Mancini lacked authority to remove the workers on February 10.

The director of the VA Medical Center, Dr. Cohen, testified that the agency's primary aim was to remove Mr. Mancini for the alleged threatening statement. Dr. Cohen stated that the "issue of the job site, removing the five Veterans, is not a removable offense." Hearing Transcript at 82. This case is an instance in which the agency devoted its primary litigation efforts to sustaining its primary charge. With regard to the nonremovable offense of alleged inadequate authority, the agency offered no testimony and failed to challenge the contrary evidence offered by Mr. Mancini. In these circumstances, we must conclude that substantial evidence does not support the Board's conclusion that the agency proved its case by a preponderance of the evidence.

The final decision of the Board, that Mr. Mancini's 30–day suspension is justified, is therefore incorrect and must be reversed. We do so, and remand the case to the Board with instructions that it order the agency to award Mr. Mancini whatever relief he is entitled to, including without limitation back pay and complete eradication of any reference in his personnel file to the charges that the agency failed to sustain.