NOTE:  Pursuant to Fed. Cir. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3195

SIDNEY WYCHE,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED:  November 13, 2006

_____

Before MICHEL, Chief Judge, RADER, and LINN, Circuit Judges.

PER CURIAM.

The Merit Systems Protection Board (the Board) affirmed the United States Postal Service's (Agency's) decision to remove Mr. Sidney Wyche.  See Sidney Wyche v. U.S. Postal Serv., No. DA-0752-05-0639I-1 (M.S.P.B., Feb. 8, 2006) (Initial Decision). Mr. Wyche appealed the Board's Initial Decision directly to this court.  For reasons set forth in this opinion, this court affirms.

I.

Following his first suspension in April 2004, Mr. Wyche began filing various grievances with the Agency claiming discrimination, harassment, and misappropriation of Government funds by Agency management; a claim with Equal Employment

Opportunity Commission, wherein he claims discrimination due to race, sex, and disability; and a request to the United States Postal Inspection Service for an investigation, asserting that the Agency has "paid off" various attorneys he hired to prosecute claims before the National Labor Relations Board, and asserting that the entire management of the Agency has engaged in "falsifying officer documents, embezzlement, bribery and conflict of interest." Though raised again in Mr. Wyche's appeal papers, these claims are not before this court.

Before this court is Mr. Wyche's appeal of the Agency's August 20, 2005 decision to remove him from his position as a mail processing clerk at the Baton Rouge, Louisiana Processing and Distribution Center. The Agency removed Mr. Wyche for "failure to follow instructions." Following a heart catheterization procedure in January 26, 2004, Mr. Wyche was told to "take it easy for a couple of days." After three days, Mr. Wyche sought permission to return to work, citing mild soreness in his groin as the only complaint. Thereafter, though Mr. Wyche was cleared to fully return to work, he started refusing to perform his assigned duties.

In April 2004, Mr. Wyche refused to perform work on a Delivery Bar Code Sorter (DBCS) machine, claiming that working alone on the machine violated his doctor's instructions. Initial Order, slip op. at 2. At that time, Mr. Wyche would clock in to work, but refuse to perform his assigned duties on the DBCS machine. As a result, on April 30, 2004, he was given notice of a seven-day suspension for refusing to perform his assigned duties. Two months after his seven-day suspension, Mr. Wyche provided a letter from a staff physician at the Department of Veterans' Affairs Outpatient Clinic, Yolanda O'Rourke, M.D., in which the physician stated that Mr. Wyche "mentioned that

he believes job-related stress accounts for much of his chest pain . . . which he believes is precipitated by stress created by operating a machine on the job which is meant to be operated by two persons." (Emphasis added.) The physician concluded her letter by stating "it seems as though the most logical solution would be to provide an additional person to assist Mr. Wyche." Mr. Wyche admitted, however, that Dr. O'Rourke is not a heart specialist or qualified to address his heart condition. Initial Decision, slip op. at 10-11.

Regardless, after receipt of the physician letter, the Agency sought clarification from Mr. Wyche regarding his physical condition and whether Mr. Wyche was requesting a reasonable accommodation or light duty. Mr. Wyche never responded. As a result, the Agency referred Mr. Wyche's situation to the District Regional Accommodation Committee (DRAC). Despite DRAC's multiple written and oral invitations to submit medical documentation and to appear before the committee to review his physical condition under the Rehabilitation Act, Mr. Wyche ignored these requests. Initial Decision, slip op. at 5. Thus, though given opportunities, both formally and informally, to request light duty or reasonable accommodation or, alternatively, to participate in the DRAC's proceedings to identify other suitable work, Mr. Wyche refused to participate, and continued to refuse to follow his supervisor's instructions to operate the DCBS machine alone.

As a result, on March 23, 2005, Mr. Wyche received a second notice of a suspension, for fourteen-days, for refusing to follow instructions to perform his assigned duties. In the second suspension letter, the Agency pointed out that Mr. Wyche never submitted evidence of a medical condition or disability that would prevent him from

performing his duties, to include working on the DCBS machine alone. Mr. Wyche continued to disregard instructions.

Therefore, on July 18, 2005, the Agency served a Notice of Proposed Removal on Mr. Wyche, citing his refusal to perform his duties, and his refusal to participate in the reasonable accommodation process before the DRAC. Despite being instructed to respond to the Notice of Proposed Removal, Mr. Wyche did not. Therefore, on August 11, 2005, the Agency removed Mr. Wyche for failure to follow instructions, serving him with the Letter of Decision.

Though given multiple opportunities to prove some kind of medical condition or disability that would prevent him from working on the DCBS machine alone, Mr. Wyche never provided any such evidence. Furthermore, though the DCBS machine is normally staffed with two people, Mr. Wyche was repeatedly told during his employment, and the Board received testimony from multiple witnesses, for both the Agency and Mr. Wyche, that when the mail volume is low or during "first pass" it is acceptable and routine to staff only one person on the DCBS machine because a "sweeper" is not needed. Initial Decision, slip op. 5-9. Mr. Wyche even called the United States Postal Service's labor union's President, Ms. Cheryl Brown, to testify on his behalf, and she testified that staffing only one person on the DCBS machine when mail volume is low or during "first pass" is in compliance with the union contract. Id., slip op. at 8-9. Mr. Wyche never complained that he was staffed on the machine alone when mail volume was high.

II.

This court has a narrow scope of review for Board decisions. This court affirms a Board decision unless it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise

06-3195                                          4

not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C § 7703(c); Hayes v. Dep't of Navy, 727 F.2d 1535, 1537 (Fed Cir. 1984). Based on this standard of review, this court will not overturn an Agency decision if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brewer v. United States Postal Serv., 647 F.2d 1093, 1096 (Ct. Cl. 1981). Regarding penalties, "the choice of penalty is committed to the sound discretion of the employing Agency and will not be overturned unless the Agency's choice of penalty is wholly unwarranted in light or all relevant factors." Guise v. Dep't of Justice, 330 F.3d 1376, 1381 (Fed. Cir. 2003).

Factually, the Board found that Mr. Wyche: (1) did not to follow instructions to operate the DBCS machine alone when doing a "first pass" or when mail volume was low; (2) did not identify any specific safety procedure that was violated by the instructions he refused to follow; and (3) though offered multiple opportunities to submit medical evidence of some condition or disability that would prevent him from performing his assigned duties, did not submit medical evidence that he required an accommodation. Initial Decision, slip op. at 11.

The Board concluded the Agency did not discriminate on the basis of disability, as Mr. Wyche did not establish he was a "qualified individual with a disability" pursuant to 29 C.F.R. § 1630.2(g). Id., slip op. at 12-13. The Board also concluded that the Agency complied with the union contract or a settlement agreement, which clearly states that staffing the DCBS machine with one person during limited volume, i.e. low volume or "first pass," is proper. Id., slip op. at 13-14. It also found Mr. Wyche's

removal proper, as employee misconduct is left to the sound discretion of the agency, LaChance v. Devall, 178 F.3d 1246, 1251 (Fed. Cir. 1999), and that the Agency gave due and proper consideration to the factors set out in Douglas v. Veterans' Administration, 5 M.S.P.R. 280, 306 (1981).

An employee does not have an unfettered right to disregard an order merely because there is substantial reason to believe that the order is not proper. Meads v. Veterans Admin., 36 M.S.P.R. 574, 578-79 (1988); see also Ingram v. Dep't of Justice, 44 M.S.P.R. 578, 582 (1990), aff'd, 925 F.2d 1479 (Fed. Cir. 1991). The employee must first comply with the order and then register his complaint or grievance, except in limited circumstances where obedience would place the employee in a clearly dangerous situation. Id. Thus, the Board's ruling is in accordance with the law and supported by substantial evidence. Accordingly, this court affirms.