## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MCCARTHY BARNES, JR.,
            Appellant,

            v.

DEPARTMENT OF DEFENSE,
            Agency.

DOCKET NUMBER
DC-0752-13-0357-M-1

DATE: February 4, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Frederic W. Schwartz, Jr., Esquire, Washington, D.C., for the appellant.

Lundi McCarthy Shafiei, Esquire, and Steven J. Weiss, Esquire,
    Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal from Federal employment.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      The following facts are undisputed.  The appellant was employed as a Police Officer, AD-0083-07, with the Pentagon Force Protection Agency (PFPA), Department of Defense, from December 8, 2008, until February 8, 2013.  Initial Appeal File (IAF), Tab 4 at 23, 83.  The agency proposed his removal based on a single narrative charge captioned Conduct Unbecoming a PFPA Police Officer.  *Id.* at 43-46.  The charge was based on his arrest for driving under the influence (DUI) after he lost control of his vehicle and it overturned.  *Id.* at 43-44.  The appellant pled guilty to a reduced charge of reckless driving.  *Id.* at 44.  He was sentenced to 6 months in jail with 5 months suspended and was allowed to serve the remainder of the sentence on weekends.  *Id.*  He also paid a fine of $2,500.00 with $1,500.00 suspended, was required to enroll in the Virginia Alcohol Substance Abuse Program (VASAP), and was issued a restricted driver's license that allowed him only to commute to and from work.  *Id.*  After he orally replied to the charge, *id.* at 39-42, the deciding official completed an analysis of

the relevant penalty factors and issued a decision sustaining his removal, *id.* at 24-38. He was removed effective February 8, 2013. *Id.* at 27.

¶3 On appeal, the appellant stipulated to most of the relevant facts regarding the incident. IAF, Tab 22 at 2-5. He stipulated that his blood alcohol level was .15, nearly double the legal limit. *Id.* at 5. He further stipulated that he had known prior to the issuance of his Virginia driver's license that driving a vehicle while under the influence of alcohol is prohibited by law. *Id.*

¶4 The arresting deputy testified at the hearing. He recounted that he knew that the appellant was a police officer because the appellant had presented his credentials at the scene of the accident. Hearing Transcript (HT) at 10-11, 17. He stated that the appellant asked him several times, "How far [he] was going to take this?" *Id.* at 18-19; IAF, Tab 4 at 62. The deputy testified that he interpreted that question to mean that the appellant was looking for treatment different from that imposed on regular citizens who are arrested for DUI, but he also conceded that this was his opinion based on the appellant's actions. HT at 19, 43-46. He further testified that when the magistrate told the appellant he would be held at the jail until sober, the appellant was "no longer calm," but rather became argumentative. HT at 20-21.

¶5 The deputy testified to other aspects of the incident that were included in the charge. He testified that he had observed a crushed case of Bud Light beer in the middle of the road beside the vehicle. HT at 9; IAF, Tab 4 at 43. He also testified that, when asked to perform various field sobriety tests, the appellant stared at him in a "state of disbelief." HT at 45. The appellant failed some of these tests. HT at 12-16; IAF, Tab 4 at 43. The deputy testified that the appellant initially refused to take a preliminary breath test. HT at 16-17. He also testified that he recovered the appellant's off-duty weapon, which was not loaded. HT at 18; IAF, Tab 4 at 44.

¶6 The administrative judge found it more likely than not that the deputy testified accurately that the appellant sought special treatment because of his

position as a police officer and that he argued with the magistrate. IAF, Tab 36, Initial Decision (ID) at 9-10. She sustained the charge of conduct unbecoming, ID at 11, and rejected the appellant's claims of harmful procedural error or other violations of law, ID at 11-14. She found that the penalty of removal was reasonable. ID at 14-24.

¶7    The finality date for the initial decision was March 28, 2014. ID at 24. The appellant filed his petition for review on March 31, 2014. Petition for Review (PFR) File, Tab 1. The Board dismissed the petition as untimely filed without good cause shown for the delay. *Barnes v. Department of Defense*, MSPB Docket No. DC-0752-13-0357-I-1, Final Order at 2, 6 (Sept. 3, 2014). The appellant sought review in the U.S. Court of Appeals for the Federal Circuit, where the court reversed the Board's decision and remanded the appeal for further proceedings. *Barnes v. Merit Systems Protection Board*, No. 2015-3018 (Fed. Cir. Aug. 19, 2015). The appeal is now before the Board for consideration on the merits.

**ANALYSIS**

The administrative judge's credibility determinations and findings of fact are entitled to deference.

¶8    While the appellant's arrest and conviction are matters of public record, and he stipulated to several relevant facts regarding the incident, both the deciding official and the administrative judge relied upon additional facts to which the arresting deputy testified regarding the appellant's conduct at the scene and later at the jail. IAF, Tab 4 at 24-24; ID at 9-11. On review, the appellant argues that the administrative judge improperly credited the deputy's testimony. PFR File, Tab 1 at 9-12, 14-15. To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's

character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

¶9        The administrative judge found that the deputy testified credibly. Although she did not address his demeanor,[2] she considered relevant *Hillen* factors in her findings. ID at 9-10. The administrative judge pointed out that the deputy's contemporaneous report of the arrest, IAF, Tab 4 at 61-62, was consistent with his oral testimony at the hearing, ID at 10; *see* HT at 18-19. We note that the deputy's report similarly addresses the appellant's argumentativeness with the magistrate to which the deputy also testified. IAF, Tab 4 at 62; *see* HT at 20-22. The administrative judge also considered the appellant's level of intoxication— nearly twice the legal limit—when the events occurred, and the effect that alcohol consumption might have had upon his perception and memory of the incident. ID at 10. The deputy interpreted the appellant's behavior at the accident scene "to mean that he was looking for some sort of special treatment other than the procedure that an average citizen would be taken through when arrested for DUI." HT at 19. The deputy reasonably inferred the appellant's intentions from his behavior at the scene of the accident and later at the jail. The appellant has not shown on review that the administrative judge's credibility evaluations were incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole, and thus, the Board may defer to them. *See Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004) (explaining that the Board may overturn an administrative judge's demeanor-based credibility

---

[2] The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

determinations when the judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole).

<u>The agency considered all the relevant penalty factors and exercised management discretion within the tolerable limits of reasonableness.</u>

¶10    The bulk of the petition for review pertains to the appellant's arguments that the deciding official incorrectly weighed the *Douglas* factors and imposed an excessively harsh penalty.  PFR File, Tab 1 at 7-24; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).  It is well-established that a penalty determination for employee misconduct is left to the sound discretion of the agency.  *Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999).  The agency is required to show only that the penalty it selected was reasonable.  It is not required to show that the penalty selected was the best penalty.  *Martinez v. Department of Defense*, 21 M.S.P.R. 556, 557-58 (1984), *aff'd*, 765 F.2d 158 (Fed. Cir. 1985) (Table).  Thus, in reviewing the penalty selected by an agency, the Board will determine only if the agency conscientiously considered all relevant factors and exercised management discretion within the tolerable limits of reasonableness.  *Douglas*, 5 M.S.P.R. at 306.  The Board will give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been exercised properly.  *Id.* at 302.  The Board will not disturb an agency's penalty if it is the maximum reasonable penalty that may be imposed after considering all of the relevant factors.  *Davis v. Department of the Treasury*, 8 M.S.P.R. 317, 320-21 (1981).  Here, it is clear that the deciding official considered all of the relevant factors.  IAF, Tab 4 at 25-26, 29-38; HT at 60-89, 91-92, 96-97, 121, 134, 138.  The administrative judge likewise closely scrutinized the deciding official's weighing of the *Douglas* factors.  ID at 14-24.

¶11    We address here the appellant's arguments regarding each of the factors he contests, but we first note a common theme reiterated throughout his discussion

of the penalty factors: The appellant argues as if he committed a per se traffic violation, denying or minimizing his other misconduct, including his behavior at the scene of the accident and his encounter with the magistrate. *See, e.g.*, PFR File, Tab 1 at 9-13. However, the agency addressed his *overall* conduct in the charge. IAF, Tab 4 at 43-44. His overall conduct thus must be considered for the penalty determination, particularly in light of his position as a law enforcement officer. *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 8 (2001) (stating that law enforcement officials are held to a higher standard of conduct than other employees). Additionally, reckless driving calls into question the good judgment of a person convicted of that offense. According to the law of the state where the arrest occurred, the term "recklessly" suggests:

> [A] disregard by the driver . . . for the consequences of his act and an indifference to the safety of life, limb, or property. . . . Factors tending to show recklessness include erratic driving, the likelihood of injury to other users of the highways, lack of control of the vehicle, driving in excess of the speed limit, dangerous driving behavior, intoxication, and noncompliance with traffic markers.

*Blevins v. Commonwealth*, 762 S.E.2d 396, 399 (Va. Ct. App. 2014); *see* Va. Code Ann. § 46.2-852.

¶12     Beyond minimizing his own misconduct, the appellant raises additional arguments concerning the deciding official's findings for several of the *Douglas* factors. Regarding the first factor, the nature and seriousness of the offense and its relationship to his employment as a police officer, the appellant argues that he was not expected to enforce traffic or DUI laws in his role as a police officer. PFR File, Tab 1 at 12. He argues that nothing in law or regulation required him to be an example to the community and that the agency's reliance on a provision of PFPA General Order 1000.3, Standards and Code of Conduct, which states that an officer's off-duty conduct must reflect favorably on the department, was improper. *Id.* at 13; *see* IAF, Tab 4 at 84-87. He asserts that his offense "ha[d] nothing to do with sound judgment" and that his understanding of the effects of

alcohol as a police officer was not superior to that of a lay person. *Id.* at 14. He further asserts that his actions were neither willful nor intentional, and instead, he acted unintentionally because he was under the influence of alcohol.[3] *Id.*

¶13     The appellant's arguments regarding the second *Douglas* factor, his job level and type of employment, are in a similar vein. He argues that nexus does not exist between the agency's mission and his offense. *Id.* at 16. He asserts that the PFPA is not charged with enforcing laws pertaining to impaired driving unless drivers are on the Pentagon Reservation or associated Federal lands. *Id.* He again takes issue with the deciding official's reliance on provisions in General Order 1000.3, including those that require police officers to conduct themselves in a way that reflects "most favorably on the department," serve as "an example to the community," and "always [represent] the right thing." *Id.* He argues that reliance on such provisions is "contrary to appropriate governmental interests and Constitutional guarantees." *Id.* He contends that the deciding official failed to give proper weight to the prefatory questions listed on the agency's *Douglas* factors analysis form regarding his dealings with the public and the relationship between the offense and his job duties. *Id.*; *see* IAF, Tab 4 at 32-33.

¶14     The nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities is the most important of the *Douglas* factors. *Gaines v. Department of the Air Force*, 94 M.S.P.R. 527, ¶ 9 (2003). Agencies are entitled to expect employees to conform to accepted standards of conduct. *Roberson v. Veterans Administration*, 27 M.S.P.R. 489, 494 (1985). This expectation is particularly relevant when the employee is charged with law enforcement duties, as law enforcement officials are held to a higher standard of conduct than other employees. *Cantu*, 88 M.S.P.R. 253, ¶ 8.

---

[3] The appellant also raises this argument for the ninth and eleventh *Douglas* factors, arguing that his decision to drive was not a conscious one because he was inebriated. PFR File, Tab 1 at 20-22.

¶15     The appellant's misconduct and his primary duties as a Police Officer were unmistakably interconnected. His job was directly related to ensuring public safety and upholding the Federal and state laws on the Pentagon Reservation. HT at 70, 75-76, 80-81; IAF, Tab 4 at 77-82. He was expected to serve as an example of a law-abiding citizen within the community, as well as to exercise good judgment and make sound decisions. HT at 67, 76, 78. The appellant's apparent disregard for the gravity of the potential consequences of driving while intoxicated, as well as his other conduct at the scene of the accident and the jail, raised legitimate concerns for the agency, compelling it to conclude that it could not trust his ability to function as a law enforcement official. HT at 67-69, 71, 96-97, 119, 121, 145; IAF, Tab 4 at 25-27, 32-37, 44-45.

¶16     To the extent that the appellant is challenging the validity of General Order 1000.3, he does so for the first time on review. The Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). The appellant has not made such a showing. In any event, he stipulated that General Order 1000.3 applies to all PFPA police officers, and he acknowledged that his behavior violated the agency's code of conduct. IAF, Tab 22 at 4; HT at 276. Finally, the appellant's assertion that he cannot be held responsible for "unintentional" actions he took while inebriated is wholly without merit. He has not shown that his ingestion of alcohol was unintentional, and the effects of alcohol ingestion on reasoning and judgment are widely understood.

¶17     The appellant argues that the deciding official should have treated the fourth *Douglas* factor, his past work record, as mitigating rather than neutral because his performance evaluations showed that he was a reliable employee who got along well with his colleagues. PFR File, Tab 1 at 18; *see* IAF, Tab 4 at 33-34. His evaluations, however, were not part of the materials that the deciding

official relied upon in making his decision. IAF, Tab 4 at 29-42, 47-82, 84-86; HT at 134, 138. In any event, even if we were to reconsider this factor as a mitigating one, the aggravating factors in this case have far greater weight.

¶18    The appellant argues that the deciding official should not have found the fifth *Douglas* factor, the effect of the offense upon the employee's ability to perform at a satisfactory level and upon his supervisor's confidence in his ability to perform, to be an aggravating factor. PFR File, Tab 1 at 18. He takes issue with the deciding official's finding that he had "the capacity to execute the mechanics of his position," but not the "moral character" to be a police officer. *Id.* He argues that the offense "was not one of moral turpitude," and in any event, "police officers should never utilize their own moral code in enforcing the law." *Id.* He argues that he committed a "single misdemeanor offense with no indication it would be repeated" and that the offense bore neither on his ability to do his job nor on public opinion. *Id.* He further argues that the deciding official, in any event, was not his immediate supervisor and retired from service soon after deciding to remove him. *Id.* at 19.

¶19    Here, the appellant distorts the deciding official's reasoning. While the deciding official acknowledged that the appellant was capable of performing "the mechanics of his position," he also found the appellant's actions to be "in conflict with the values of law enforcement and the mission of th[e] organization." IAF, Tab 4 at 34. He cited that the appellant's "disregard for the safety of the community and the public," violation of his sworn oath to uphold the law, and poor judgment, as illustrated by his "atrocious decision . . . to get behind the steering wheel of a motor vehicle in an attempt to drive home while intoxicated." HT at 70, 73, 145. Where an employee's misconduct raises concerns about his judgment, an agency may reasonably conclude that he cannot be trusted with law enforcement duties. *See, e.g., Fischer v. Department of the Treasury*, 69 M.S.P.R. 614, 619 (1996). That the deciding official was not the

appellant's immediate supervisor and that he retired soon after making the removal decision are of no consequence.

¶20 Regarding the sixth *Douglas* factor, the consistency of the penalty with those penalties imposed upon other employees for the same or similar offenses, the appellant argues that he knew of other employees who had committed similar offenses but that the administrative judge would not let him conduct discovery or call these witnesses. PFR File, Tab 1 at 19. Issues related to discovery and the admissibility of evidence are addressed below; however, we note that the deciding official asked the agency's human resources department for information regarding "all similar cases involving this type of infraction." HT at 150-51. He received information about a single similar case, which involved speeding on a motorcycle (though no DUI offense), for which the employee was removed. IAF, Tab 4 at 34-35; HT at 151-52.

¶21 As for the consistency of the penalty with the agency's table of penalties, the seventh *Douglas* factor, the appellant asserts that the deciding official ignored general guidance in the table, which states that "[a] first offense normally does not warrant the removal of an employee," and that a lesser penalty is proper "[w]hen appropriate and action other than removal will correct an employee's conduct." PFR File, Tab 1 at 20; *see* IAF, Tab 18 at 29. As the administrative judge correctly noted, however, the guidance "does not prohibit an agency from imposing removal for a first offense of misconduct," and "there are certain acts of misconduct which are so egregious that removal is warranted for the first offense." ID at 13. In any event, for the charge of Conduct Unbecoming a Federal Employee (Immoral, indecent, illegal, or disgraceful conduct), the penalties listed in the table range from a 5-day suspension to removal for a first offense. IAF, Tab 17 at 85.

¶22 Regarding the ninth *Douglas* factor, the clarity with which he was on notice of any rules he violated in committing the offense or had been warned about the conduct in question, the appellant argues that "nothing in the record or in

common knowledge" would have alerted him that he would have been removed for driving under the influence of alcohol. PFR File, Tab 1 at 20. This argument is unavailing. The appellant stipulated that he "has known since before he was issued his Virginia Driver's License that driving a vehicle while under the influence of alcohol is prohibited by law." IAF, Tab 22 at 5. He also stipulated that the agency's code of conduct applies to all PFPA Police Officers. *Id.* at 4. He additionally stipulated that he was required to establish and maintain a working knowledge of all laws, regulations, administrative instructions, general orders and standard operating procedures of the agency. *Id.* The appellant likewise would have had access to the agency's table of penalties, which states that removal may be appropriate for a first offense of Conduct Unbecoming a Federal Employee.

¶23    The appellant argues that the deciding official misunderstood the tenth *Douglas* factor, the potential for rehabilitation. PFR File, Tab 1 at 21-22. He argues that the deciding official presupposed without any evidence that he would commit the same offense in the future. *Id.* at 21. Instead, the appellant argues, he would be unlikely to do so because he committed the offense during a time of unusual personal stress, his work record was good, and he completed the VASAP program. *Id.* at 21-22. The deciding official, however, considered these and other mitigating factors in making his decision. IAF, Tab 4 at 26, 33-34, 36-37; HT at 62, 65, 126, 156-57. He also acknowledged that the appellant was apologetic and brought his arrest to the attention of management officials. IAF, Tab 4 at 36; HT at 63. Having weighed these factors, the deciding official nevertheless concluded that the appellant did not have a strong potential for rehabilitation. IAF, Tab 4 at 36; HT at 83-87, 161-62. The deciding official concluded that the appellant's record of poor decision-making and demonstrated disregard for the law and public safety, as well as his criminal conviction for DUI, detracted from his potential for rehabilitation, especially given his job

duties and the requirement that he maintain a security clearance for continued employment. IAF, Tab 4 at 36; HT at 83-87, 161-62.

¶24 The administrative judge upheld the deciding official's conclusions. ID at 19-20. The administrative judge additionally noted that the appellant completed substance abuse counseling, but she acknowledged that it was unclear whether the treatment program addressed the misconduct at issue. ID at 20. However, even if it did, a good prognosis or a favorable "forward-looking analysis" for an appellant's future behavior does not outweigh the agency's legitimate apprehension as to his ability to perform his duties, and the effect of his proven misconduct on the efficiency of the service. *See, e.g.*, *Quander v. Department of Justice*, 22 M.S.P.R. 419, 422 (1984), *aff'd*, 770 F.2d 180 (Fed. Cir. 1985) (Table). With particular regard to the appellant's rehabilitation potential, we find troubling his insistence that his overall misconduct was less egregious because alcohol clouded his judgment, as this indicates that he appears to be avoiding responsibility for his actions. The appellant's reliance on this argument only reinforces our view that the deciding official properly weighed the factors for and against rehabilitation.

¶25 As for the twelfth *Douglas* factor, the adequacy and effectiveness of alternative sanctions, the appellant argues that the deciding official could not show that he would hesitate to arrest others for similar misconduct. PFR File, Tab 1 at 23. He argues further that the deciding official misapplied *Giglio v. United States*, 405 U.S. 150 (1972),[4] asserting that the rule therein applies only to convictions for impeachable offenses as defined by Rule 609 of the Federal Rules

---

[4] Under *Giglio*, investigative agencies must turn over to prosecutors, as early as possible in a case, any potential impeachment evidence concerning the agents involved in the case. *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 4 n.1 (2012). The prosecutor then will exercise his discretion regarding whether the impeachment evidence must be turned over to the defense. *Id.* A "*Giglio*-impaired" agent is one against whom there is potential impeachment evidence that would render the agent's testimony of marginal value in a case. *Id.* Thus, a conviction is less likely in a case that depends primarily on the testimony of a *Giglio*-impaired witness. *Id.*

of Evidence. A DUI conviction would not meet the definition of an impeachable offense under Rule 609.[5] *Id.* at 23-24; *see* IAF, Tab 4 at 37. The appellant further asserts that nothing in his removal would deter other employees from driving while intoxicated, but a lesser penalty nevertheless would deter him from engaging in the same behavior, given the high personal costs imposed by this incident. PFR File, Tab 1 at 24.

¶26    Setting aside the deciding official's reliance on *Giglio*, we are satisfied that he considered lesser sanctions. However, given his conclusion that the appellant's behavior was incompatible with a career in law enforcement, the deciding official properly found that no alternative sanction would be appropriate. HT at 154-55. Because the agency no longer trusted the appellant to satisfactorily perform his law enforcement duties, imposing a lesser sanction would not have promoted the efficiency of the service. *Id.*

The appellant's removal promotes the efficiency of the service.

¶27    The appellant asserts that, because the deciding official misconstrued the *Douglas* factors, his removal did not promote the efficiency of the service. PFR File, Tab 1 at 25. The deciding official, however, did not misconstrue the *Douglas* factors. In any event, an adverse action promotes the efficiency of the service when the grounds for the action relate to an employee's ability to satisfactorily perform his job, or to some other legitimate government interest. *Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 665 (1991). Here, the agency established a sufficient nexus between the charged conduct and the appellant's duties as a Police Officer. Even if it is unlikely that the appellant would have ever been required to make a DUI arrest while on duty, the agency

---

[5] Under Rule 609, an impeachable offense is "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year" or "any crime regardless of the punishment" where "the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a).

has a legitimate interest to ensure that its law enforcement officers reliably exercise sound judgment, obey all applicable laws, and refrain from conduct that reflects unfavorably on the agency.

The administrative judge's discovery and evidentiary rulings are entitled to deference.

¶28     The appellant challenges various evidentiary and discovery rulings that the administrative judge made below.[6]  An administrative judge has considerable authority in conducting Board appeals.  5 C.F.R. § 1201.41(b).  The Board will not reverse her rulings on discovery matters absent an abuse of discretion. *Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table).  She also has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985).

¶29     The appellant argues that the administrative judge abused her discretion by declining to extend discovery deadlines.  PFR File, Tab 1 at 25-27.  The administrative judge did so after the appellant failed to timely explain why such an extension would be necessary.  The administrative judge set forth in considerable detail the reasons for her denial.  IAF, Tab 15.  The Board has upheld the denial of extensions of discovery deadlines in similar circumstances. *See, e.g.*, *Fisher v. Department of Defense*, 59 M.S.P.R. 165, 170-71 (1993).

¶30     The appellant argues that the administrative judge barred the appearance or limited the testimony of witnesses who could have testified regarding the penalties they had received for misconduct and witnesses who could have addressed his potential for rehabilitation.  PFR File, Tab 1 at 19, 27-28.  The agency showed, however, that none of these proffered witnesses that the

---

[6] The appellant labels these discovery and evidentiary rulings as harmful errors.  The appellant's arguments are more properly considered as allegations of abuses of discretion. *See* 5 C.F.R. § 1201.41(b).

administrative judge denied could have provided relevant testimony as to disparate penalties. IAF, Tab 22 at 8 & n.2. As for those witnesses whose testimony was limited, PFR File, Tab 1 at 27, the administrative judge found the proffered testimony for one witness to be outside the scope of testimony delineated during the prehearing conference, HT at 181-84, and the appellant himself withdrew his request for the other witness, IAF, Tab 32. The appellant additionally asserts, without further elaboration, that the administrative judge "refused to allow [his] attorney to elicit testimony at the hearing in a number of relevant areas particularly during the cross-examination of the deciding official." PFR File, Tab 1 at 28. Without additional information, however, we cannot address that issue. *See, e.g.*, *Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992) (explaining that a petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record). In summary, we find no abuse of discretion in the administrative judge's evidentiary and discovery rulings.

The appellant has not shown that the administrative judge committed harmful procedural error.

¶31 Next, the appellant argues that the administrative judge erroneously limited his reliance on the Administrative Procedures Act. PFR File, Tab 1 at 27-28. The administrative judge asked him, however, to set forth during the prehearing conference the specific provisions of the Act upon which he intended to rely. IAF, Tab 22 at 7. He could not do so, *id.*, nor was he able to provide such information during the hearing, ID at 12-13. In any event, his petition for review fails to explain how this alleged error affected his substantive rights. *See Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (holding that an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

<u>The appellant has not shown he was harmed by the alleged inaction of the Board's Washington Regional Office.</u>

¶32    Finally, the appellant alleges that the Washington Regional Office failed to provide him a copy of the hearing compact disc in a timely manner, and he thus was unable to provide record citations in the petition for review.  PFR File, Tab 1 at 28-29.  Under the Board's regulations, a court reporter prepares the official recording of the hearing, which becomes part of the record.  5 C.F.R. § 1201.53(a).  A compact disc made from the recording, however, does not contain record citations and alone would not have enabled the appellant to add record citations to his petition for review.  The appellant might have asked the court reporter to prepare a full or partial transcript, 5 C.F.R. § 1201.53(b), from which he could have obtained citations.  Nevertheless, the agency avers that no one ever requested a transcript before the petition for review was due.  PFR File, Tab 4 at 29 & n.5.  Any harm suffered by the appellant thus was self-inflicted.  For all of the reasons stated above, we thus affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:          _____

                                   William D. Spencer
                                   Clerk of the Board

Washington, D.C.