# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANNETTE E. SPIVEY,
                    Appellant,

            v.

DEPARTMENT OF THE TREASURY,
                    Agency.

DOCKET NUMBER
CH-0752-16-0318-I-1

DATE: February 15, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Debra J. Gipson</u>, Euclid, Ohio, for the appellant.

<u>Joshua A. Dombrow</u>, Esquire, and <u>Pamela D. Langston-Cox</u>, Esquire,
    Chicago, Illinois, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate dissenting opinion.

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 10-day suspension.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      The agency proposed the appellant's removal from her position as a GS-0962-08 Contact Representative based upon two charges. Initial Appeal File (IAF), Tab 4 at 87-91. First, the agency charged that the appellant willfully failed to timely file her 2012 Federal income tax return in violation of section 1203 of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA) (codified at 26 U.S.C. § 7804 note (Termination of employee for misconduct)) without reasonable cause for her noncompliance and that, even if she did not willfully fail to timely file her return, she still did not file it by the due date, as required by 5 C.F.R. § 2635.809. IAF, Tab 4 at 87-88; *see* Pub. L. No. 105-206, 112 Stat. 685, 720-22. Second, the agency charged that the appellant failed to properly file her 2013 Federal income tax return because, as a result of multiple math errors, she incurred additional taxes that were not satisfied. IAF, Tab 4 at 87-88. The appellant orally responded to the proposal notice through her union representative. *Id.* at 44-63. The agency's Section 1203

Review Board—which makes recommendations to the agency's Commissioner, the only person within the agency who can mitigate the removal penalty for misconduct under section 1203 of the RRA—did not recommend mitigating the removal penalty. *Id.* at 40; *see* [26 U.S.C. § 7804](#) note (Termination of employee for misconduct). After receiving the Review Board's decision, the agency imposed the appellant's removal. IAF, Tab 4 at 35-39.

¶3    The appellant then filed the instant appeal. IAF, Tab 1. After holding the appellant's requested hearing, the administrative judge issued an initial decision sustaining only the second charge and mitigating the penalty to a 10-day suspension. IAF, Tab 25, Initial Decision (ID). The agency filed a petition for review in which it asserts that the administrative judge erred in failing to sustain the first charge and in mitigating the penalty. Petition for Review (PFR) File, Tab 1.[2] The appellant responded in opposition to the petition and asserts that she is entitled to back pay and attorney fees. PFR File, Tabs 3-4. The agency has replied.[3] PFR File, Tab 5.

---

[2] On review, the parties do not challenge the administrative judge's decision to sustain the second charge, find nexus, and determine that the appellant did not present sufficient evidence or argument to support her affirmative defenses. We find no reason for disturbing the initial decision on these issues. ID at 7-11; *see Crosby v. U.S. Postal Service*, [74 M.S.P.R. 98](#), 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

[3] The agency filed a motion to strike the appellant's submission regarding its failure to comply with the administrative judge's interim relief order, and the appellant responded in opposition to the agency's motion. PFR File, Tabs 6-8. We deny the agency's motion and have considered the appellant's submission as a pleading under [5 C.F.R. § 1201.116](#) challenging the agency's compliance with the interim relief order. However, we find that the appellant's petition does not meet the criteria for review in any event, and the issuance of our final decision renders moot any dispute concerning the agency's compliance with the interim relief order. *Ayers v. Department of the Army*, [123 M.S.P.R. 11](#), ¶ 8 (2015). If the appellant believes the agency is not in compliance with the Board's final order, or if she seeks an award of attorney fees as the prevailing party in this appeal, she may file a petition for enforcement and/or a request for attorney fees in accordance with the instructions provided below.

## DISCUSSION OF ARGUMENTS ON REVIEW

We affirm the administrative judge's decision not to sustain the first charge.

¶4    On review, the agency challenges the administrative judge's decision not to sustain the first charge, which, under the first alternative, was based upon the appellant's alleged willful failure to file her 2012 tax return in violation of section 1203(b)(8) of the RRA without reasonable cause for the failure. PFR File, Tab 1 at 9-22; *see* 26 U.S.C. § 7804 note (Termination of employee for misconduct). The agency asserts that, contrary to the administrative judge's findings, the appellant never mailed the 2012 return, her failure to file the return was willful, and there was no reasonable cause for her failure to file the return. PFR File, Tab 1 at 9-16. The agency also asserts that the administrative judge demonstrated apparent confusion regarding her reasonable cause determination. *Id.* at 9-11.

¶5    The administrative judge found that the appellant timely filed her 2012 tax return and that the agency thus failed to prove the first charge, as either a willful violation under section 1203(b)(8) or a violation of 5 C.F.R. § 2635.809. ID at 7. She considered the parties' agreement that, because the appellant obtained an extension of time to file her 2012 tax return, her return was due on October 15, 2013, and that the return was never actually received. ID at 4. She also noted the appellant's testimony that she filed the return in early October 2013 by regular mail because a family situation made it difficult for her to send the return by certified mail or file it at the agency's office, as she usually did. ID at 5; PFR File, Tab 1, Hearing Transcript (HT)[4] at 82-83 (testimony of the appellant). Additionally, the administrative judge considered the appellant's testimony that she did not become aware until November 2014 that the agency did not receive the 2012 tax return when her acting manager notified her of this fact. ID at 5; HT at 89-90 (testimony of the appellant). The administrative judge considered the

---

[4] The court reporter's transcript submitted with the agency's petition for review is properly citable as the official hearing record. *See* 5 C.F.R. § 1201.53.

agency's arguments that the appellant acted willfully because she twice disregarded notices informing her that the agency had not received her 2012 tax return, which notices were sent to the appellant's post office box in September and October 2014, and because she did not file a substitute return until more than 5 months after her manager notified her that the agency did not receive the return. ID at 5. However, she also considered the appellant's response that she did not receive the agency's notices because she did not access her post office box, which was located at a facility with limited hours, that she delayed filing her return after her manager notified her about the agency's nonreceipt because, due to certain financial issues, she could not locate a draft copy she had originally used to file the return, and that she experienced health issues and multiple family issues during the time period in question. ID at 5-6; HT at 89-93 (testimony of the appellant).

¶6 The administrative judge determined that the appellant timely filed her 2012 tax return finding the appellant credible, based in part on her demeanor. ID at 6-7. She found that the appellant was the only one who was able to observe whether or not she had filed her return in the manner described and her testimony on this was not inherently improbable because it is not unusual for items to get lost in the mail. *Id.* The administrative judge further stated that the appellant's demeanor indicated that she was truthful, she was earnest and unwavering in her description of events, her voice was confident and she testified without hesitation, and her facial expression appeared honest without any sign of guile or deception. ID at 7.

¶7 The Board must defer to an administrative judge's credibility determinations when she relies "expressly or by necessary implication" on a witness's demeanor at the hearing and will also defer to an administrative judge's findings that are "necessarily intertwined" with issues of credibility and an analysis of a witness's demeanor. *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016). The Board "is not free to overturn an

administrative judge's demeanor-based credibility findings merely because it disagrees with those findings." *Haebe v. Department of Justice*, 288 F.3d 1288, 1299 (Fed. Cir. 2002). Rather, the Board may overturn credibility-based determinations only when it has "sufficiently sound" reasons for doing so. *Id.* at 1301.[5] As a result of the "sufficiently sound" requirement for overturning an administrative judge's credibility determinations, the Board has established for administrative judges guidance relating to credibility determinations. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987); *see also Haebe*, 288 F.3d at 1301. Even though the agency disagrees with the administrative judge's credibility findings and weighing of the evidence, the initial decision reflects that the administrative judge cited to and applied the *Hillen* factors. In sum, we find that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions. Consequently, we discern no reason to reweigh the evidence or substitute the Board's own judgment on credibility issues. *See Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). Accordingly, we agree with the administrative judge that the agency failed to prove the first charge based upon the appellant's alleged willful failure to file her 2012 tax return in violation of section 1203(b)(8) of the RRA.

¶8      The agency also asserts that, even if the first charge is not sustained based upon the appellant's willful failure to file her return, it should be sustained as a violation of 5 C.F.R. § 2635.809 because of the following: (1) the agency did not receive the appellant's 2012 tax return until May 2015; (2) she was not complying with her duty as an agency employee until it was received; (3) she did not actually file the return on time; and (4) the return was not complete when it was

---

[5] The court in *Haebe* explained that the deference requirement stems from a fundamental notion of fairness as expressed by the court in *Jackson v. Veterans Administration*, 768 F.2d 1325, 1331 (Fed. Cir. 1985): "great deference must be granted to the trier of fact who has had the opportunity to observe the demeanor of the witnesses, whereas the reviewing body looks only at 'cold records.'"

filed because she owed taxes for which she established an installment agreement. PFR File, Tab 1 at 23-25; IAF, Tab 4 at 26-30, 111, 113-14.  The agency points to 5 C.F.R. § 2635.809, which states that Government employees are required to "satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law."  Section 2635.809 defines "in good faith" as "an honest intention to fulfill any just financial obligation in a timely manner."

¶9        As discussed above, we defer to the administrative judge's finding that the appellant filed her return via regular mail.  ID at 6-7.  Thus, the agency's argument that the appellant did not actually file the tax return does not provide a basis for sustaining the charge as a violation of 5 C.F.R. § 2635.809.

¶10       Further, we find that the charge cannot be sustained based upon the agency's failure to receive the return or based upon the appellant's failure to submit a complete return with an installment agreement because these claims were not included in the proposal notice.  IAF, Tab 4 at 87.  Procedural due process requires an agency to afford an employee notice of the charges against her and of the agency's supporting evidence and to give that employee an opportunity to respond before effecting her removal.  5 U.S.C. § 7513(b)(1); *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1375-76 (Fed. Cir. 1999).  The specific reasons for a proposed adverse action against an employee must be set forth in sufficient detail to allow the employee to make an informed reply.  *Smith v. Department of the Interior*, 112 M.S.P.R. 173, ¶ 5 (2009).  In determining if an employee has received adequate notice of a charge, the Board examines the employee's reply to see whether the employee defended against it.  *See Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 22 (2015).

¶11       The proposal notice stated that, even if the appellant's failure to file her 2012 return was not willful, she still did not timely file her tax return by the due date.  IAF, Tab 4 at 87.  The proposal letter also stated that, as of April 8, 2015,

the appellant had not filed a tax return for tax year 2012. *Id.* It did not mention the payment or nonpayment of the appellant's taxes and, although it indicated that the agency did not receive the 2012 return, it did not charge her with failing to file the return such that it was received by a certain date. *Id.* In her oral reply, the appellant described her health and family issues and stated that these constituted reasonable cause and mitigating circumstances for her late filing of the 2012 tax return. *Id.* at 59. She did not discuss the agency's receipt of the 2012 tax return or payment of her 2012 taxes. *Id.* at 50-61.

¶12    Thus, neither the proposal nor the appellant's reply demonstrates that she received notice of the charge, as construed by the agency on review. Consequently, the charge cannot be sustained on these alternative bases now asserted by the agency. *See Thome*, 122 M.S.P.R. 315, ¶ 22; *see also Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001) (finding that the Board will not sustain an agency action on the basis of a charge that could have been brought, but was not); *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 272 (1998) (explaining that the Board adjudicates the charge as it is described in the agency's proposal and decision notices), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table). Accordingly, we agree with the administrative judge's decision not to sustain the first charge.

We discern no error in the administrative judge's decision to mitigate the penalty to a 10-day suspension.

¶13    When, as here, not all of the agency's charges are sustained, the Board will consider carefully whether the sustained charges warrant the penalty imposed by the agency. *Blank v. Department of Army*, 85 M.S.P.R. 443, ¶ 9 (2000), *aff'd*, 247 F.3d 1225 (Fed. Cir. 2001). In doing so, the Board must first examine whether the agency has indicated either in its final decision or during proceedings before the Board that it desires a lesser penalty in the event not all of the charges are sustained. *LaChance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). If the agency has not so indicated, the Board may presume that the agency desires the

maximum reasonable penalty and must examine whether the agency-imposed penalty is within the maximum limits of reasonableness. *Id.* The court in *LaChance* explained that:

> [W]hen the Board mitigates to the maximum reasonable penalty under such circumstances, the Board's action appropriately presumes that it is acting in conformity with the agency's penalty choice, either because the agency explicitly has made clear its desire that the maximum reasonable penalty be imposed or implicitly has done so by virtue of its silence.

*Id.* The Board is ultimately required to "independently balance the relevant *Douglas* factors with heightened sensitivity when reviewing agency penalties upon fewer charges than those brought by the agency." *Id.* at 1257.

¶14        Here, the administrative judge reviewed the testimonial and documentary evidence and found that the agency never stated that it desired that a lesser penalty be imposed if only one of the two charges was sustained. ID at 11. The administrative judge therefore reviewed the penalty determination to determine whether removal was the maximum reasonable penalty for the single, sustained charge. *Id.* The administrative judge found that the deciding official did not give proper weight to certain significant mitigating circumstances surrounding the appellant's misconduct and thus conducted her own penalty analysis. ID at 12-13. She based her finding on the deciding official having given "neutral" as opposed to positive weight to an important mitigating factor under the circumstances. *Id.*; HT at 46 (testimony of the deciding official).

¶15        We must defer to the administrative judge's findings on these mitigating factors because, as explained below, they are "necessarily intertwined" with the administrative judge's credibility findings. *See Purifoy*, 838 F.3d at 1373 (finding that the administrative judge's findings on the appellant's "propensity for rehabilitation are necessarily intertwined with issues of credibility and an analysis of his demeanor at trial, and they deserved deference from the Board."). Specifically, in failing to sustain the first charge, the administrative judge

considered the appellant's testimony that "this was a chaotic time" in her life when she was "overcome by many misfortunes." ID at 6. The administrative judge also discussed the appellant's many difficult personal and family issues in further detail. *Id.* Based upon the appellant's demeanor, the administrative judge fully credited the appellant's version of events. ID at 7. Further, in determining whether the deciding official properly considered the mitigating factors, the administrative judge described the appellant's mental health issues, which arose out of these stressors. ID at 12. Because the administrative judge credited the appellant's version of events, she found that the deciding official should have considered the events as mitigating factors as opposed to weighing them merely as "neutral." *Id.* We defer to this finding and the administrative judge's resulting conclusion that a 10-day suspension was the maximum reasonable penalty for the sustained charge. *Id.*; *see LaChance*, 178 F.3d at 1260.

¶16 In determining the penalty, the administrative judge considered the following: the only sustained charge, the appellant's improper filing of her 2013 tax return, while serious, was not nearly as serious as the other charge that was not sustained; the appellant's position required her to advise others about tax issues and thus she was expected to strive for accuracy in her own taxes; she previously received a 5-day suspension in 2006 for having improperly filed her tax return; based upon her prior offense and periodic reminders from the agency, she was on notice that she should properly file her tax return; the fact that this was her second offense weighed against her potential for rehabilitation, but this was mitigated by her many difficult personal circumstances at the time; the deciding official testified that the two charges did not diminish her confidence in the appellant's ability to accomplish her work; and there was no notoriety of the offense. ID at 13; HT at 43-47 (testimony of the deciding official); IAF, Tab 4 at 36-37, 80-85, 113-17, 218, 220-30. The administrative judge also considered that a 10-day suspension for an offense of improper but unintentional filing of a tax return was consistent with the agency's penalty guide. ID at 13; IAF, Tab 4

at 130.    Based upon our review of the record, we discern no error in this determination and find that the administrative judge appropriately weighed the *Douglas* factors.    Accordingly, we affirm the administrative judge's decision to mitigate the penalty to a 10-day suspension.

## ORDER

¶17    We ORDER the agency to cancel the removal action and substitute it with a 10-day suspension without pay.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶18    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶20    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not

fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶21    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your

---

[7]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

¶1        For the reasons set forth below, I respectfully dissent from the majority opinion in this case.

¶2        The majority affirms the administrative judge's decision not to sustain charge 1 under which the agency claimed that the appellant willfully failed to timely file her 2012 tax return by the due date, in violation of section 1203 of the Internal Revenue Service Restructuring and Reform Act of 1998 without reasonable cause for her noncompliance or, even if her actions were not willful, violated 5 C.F.R. § 2635.809 because her return was not timely filed.

¶3        It is undisputed the appellant was granted an extension, from April 15 to October 15, 2013, to file her 2012 tax return.  Initial Appeal File (IAF), Tab 4 at 27, 97, 101, Tab 20 at 6; Hearing Compact Disc (HCD) (testimony of the appellant).  The appellant testified to her understanding that tax returns filed by the extended deadline must be received, not just postmarked, by the deadline.  HCD (testimony of the appellant).  Preponderant evidence establishes the agency did not timely receive the appellant's 2012 tax return.  On September 12 and October 6, 2014, the agency sent notices to the appellant's address of record indicating she failed to file a tax return for 2012.  IAF, Tab 4 at 110-11.  During a meeting on November 19, 2014, the appellant's supervisor informed her that her request for a filing extension for 2012 was received, but the actual return was not.  *Id.* at 101.  The appellant was instructed to file her return by December 3, 2014.  *Id.*  Under charge 1 in its proposal notice dated April 16, 2015, the agency again informed the appellant that its records indicated she still had not filed a return as

of April 8, 2015. *Id.* at 87-88. The agency did not receive the appellant's 2012 tax return until May 1, 2015. *Id.* at 26.

¶4 The majority defers to the administrative judge's findings that the appellant credibly testified she timely filed her 2012 tax return by October 15, 2013, and, therefore, the agency failed to prove charge 1 under either alternative. Specifically, the administrative judge noted the appellant's testimony that she filed the return in early October 2013 by regular mail because her own health issues and family issues made it difficult for her to use certified mail; that she did not receive, or therefore act upon, the two notices the agency sent her informing her that her 2012 return had not been received, because she did not access her post office box, which was located at another facility with limited hours; and that, due to financial issues that affected her ability to locate a draft copy of her original return, she did not file a substitute return until nearly 6 months after she had been notified that her original return had not been received. IAF, Tab 25, Initial Decision (ID) at 5-6. The AJ found that no one other than the appellant could testify regarding whether she filed her return as she described; her explanation was not inherently improbable because items get lost in the mail; and, her demeanor indicated she was truthful. ID at 7.

¶5 The majority opinion correctly states that the Board must defer to an administrative judge's credibility determinations when they are based on a witness's demeanor, and that the Board will overturn such determinations only when it has sufficiently sound reasons to do so. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). However, we diverge in that I believe there are sufficiently sound reasons in this appeal to overturn the administrative judge's credibility findings, notwithstanding her reliance on the appellant's demeanor. As set forth in detail below, the appellant has made several inconsistent, inherently improbable assertions, which warrant finding her not credible. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

¶6	Notes from the November 2014 meeting indicate the appellant told her supervisor she was "certain" her 2012 tax return "was mailed." IAF, Tab 4 at 101. However, there is evidence that the appellant also made less absolute statements concerning the filing of her 2012 tax return. The November 2014 meeting notes indicate the appellant stated she "was not aware that the return for TY12 was not filed." *Id.* at 101. And, a February 2015 Factfinding Memorandum indicates the appellant "stated that she thought she had filed." *Id.* at 97.

¶7	In a signed statement made under penalty of perjury in June 2016, the appellant asserted she filed her 2012 tax return "on or before October 15, 2013." IAF, Tab 20 at 118.[1] At the hearing, the appellant suggested she placed her 2012 tax return in a residential mailbox in early October before the deadline, so that it would reach the agency by the deadline. HCD (testimony of the appellant). She testified that while she typically sends her returns by certified mail, she was unable to do so in October 2013 because she was the primary caregiver for her mother who could neither be left alone nor leave the home to go to the post office. *Id.*

¶8	The detailed explanation the appellant offered at hearing is not documented in the notes from the November 2014 meeting or the February 2015 Factfinding Memorandum. *See* IAF, Tab 4 at 97-101. The appellant also did not mention any of these details during her August 2015 oral reply. In fact, she admits she did not

---

[1] The administrative judge stated in her prehearing conference summary that the agency withdrew its proposed Exhibit 10. IAF, Tab 21 at 6. The agency timely objected, stating:

> [T]he Agency understood that, while the Administrative Judge did not approve the totality of proposed Agency Exhibit 10, she did approve the document containing Appellant's statement under penalty of perjury that she timely filed her 2012 Federal Income Tax return as the Exhibit (page 118 of 141 in the electronically uploaded version of the Agency's Pre-hearing Submissions).

IAF, Tab 22 at 2. The appellant did not respond to the agency's objection. Accordingly, I find it appropriate to consider this document.

even allege during her oral reply that she timely filed her 2012 tax return. *See* HCD (testimony of the appellant). To the contrary, she[2] argued her conduct did not violate section 1203(b)(8), but "Title 5 CFR Section 2635.809 is a more reasonable charge [for] her late filing." *Id.* at 57, 60. She further argued a lesser penalty, such as a suspension, was warranted because she "had mitigating circumstances" and "reasonable cause for her late filing of 2012." *Id.* at 59, 60-61. She explained:

> Ms. Spivey's 2012 return as a calendar year filer had an original due date of April 2013. Her therapy began in December of 2012, prior to her 2012 tax return due date. It is reasonable to correlate the late filing [with] Ms. Spivey's peak of her major depression.

*Id.* at 56, 66. She stated December 2012 is when she "decided that this disease was evolving into something that she could no longer deal with on her own," which is why she sought therapy at that time.[3] *Id.* at 53.

¶9 When confronted with this inconsistency at the hearing, the appellant asserted she believed her representative, in repeatedly referencing a "late filing," was referring to her failure to file her return by the December 2014 deadline she discussed with her supervisor during the November 2014 meeting. HCD (testimony of the appellant). She testified she believed this because she had already discussed the circumstances surrounding the October 2013 filing deadline

---

[2] The appellant's designated union representative made the oral reply on her behalf, but the appellant was present. HCD (testimony of the appellant). They were "permitted to consult with one another at any time during the proceeding." IAF, Tab 4 at 40. At the conclusion of the oral reply, the appellant confirmed to the Oral Reply Officer that she had been provided with a full and fair opportunity to make the oral presentation. *Id.* at 46, 62-63. The appellant did not make any substantive corrections to the transcript of the reply. *Id.* at 66.

[3] A letter dated June 24, 2015, stated the appellant could submit documentation regarding "any medical condition which you believe has contributed to the reason(s) for the proposed action." IAF, Tab 4 at 70. The appellant submitted such evidence to Federal Occupational Health on July 10, 2015. *Id.* at 61, 69-78. This lends further support to finding the appellant intended to establish a basis to mitigate the penalty for her misconduct of late filing.

with her supervisor during the November 2014 meeting. *Id.* I find this testimony wholly unpersuasive and implausible. The appellant's supervisor was neither the proposing nor the deciding official, and the supervisor was not present during the oral reply. *See* IAF, Tab 4 at 39, 46, 91. The Oral Reply Officer reiterated this information at the start of the oral reply, and the appellant indicated she had no questions about it. *Id.* at 49-50. I see no reason why the appellant would have reasonably believed she did not need to fully respond to the charges against her during the oral reply simply because she had discussed part of the allegations with an uninvolved party months before. Indeed, the appellant's representative indicated, at the outset of his remarks on the appellant's behalf, his understanding that charge 1 concerned, inter alia, the appellant's "fail[ure] to file [her] 2012 Federal Income Tax Return by . . . the expiration date of a valid extension." *Id.* at 50-51. Again, at no point did the appellant clarify that she had, in fact, timely filed her 2012 tax return before her valid extension expired. Instead, she argued a lesser penalty was warranted because the "late filing" was not willful, but rather, was due to her medical condition and other "unfortunate circumstances." *Id.* at 57-61.

¶10  The appellant testified she "was under the impression" her return was timely received and did not learn otherwise until the November 2014 meeting with her supervisor. HCD (testimony of the appellant). She testified, "I didn't know the agency was trying to get in touch with me." *Id.* However, the record reflects the appellant had a balance owed when she submitted her 2012 tax return in May 2015. IAF, Tab 4 at 26-27, Tab 20 at 16. While I recognize this is not part of the charged misconduct, I find it relevant to the appellant's credibility. Presumably, she would have been aware of this balance when she purportedly submitted her 2012 tax return for the first time in October 2013. It is undisputed she did not establish a payment plan to address this balance until September 2015. *See* IAF, Tab 4 at 28; Petition for Review (PFR) File, Tab 1 at 36-37 (testimony of Tax Compliance Branch employee). I find it implausible that the appellant

would have reasonably believed her return was timely received when, according to her, she received no contact from the agency for more than a year thereafter, despite owing a balance she knew she had not paid. It also strains credulity that the appellant did not anticipate contact from the agency under these circumstances.

¶11    The appellant acknowledges she failed to comply with her supervisor's November 2014 instructions to file her 2012 tax return by December 3, 2014. HCD (testimony of the appellant). The appellant testified she "usually" keeps her tax returns in a storage unit because she believes it to be "more secure" than keeping them in her home. *Id.* She testified she placed her 2012 tax return draft in storage after she mailed the final version. *Id.* At the hearing, the appellant's designated representative asked her, "When you were informed by your acting manager that your income tax return for 2012 hadn't been filed, did you take any steps to go and search in the storage unit to go find the tax return?" *Id.* She responded that she "initially" thought her 2012 return draft was in her home. *Id.* She thus believed she could easily recreate the return and meet the December 2014 deadline. *Id.* "And then, when [she] realized it wasn't in the house, [she] couldn't access the storage unit because when you don't pay they put an extra lock on it until you become current."[4] *Id.* I find these claims difficult to reconcile with the appellant's signed statement made under penalty of perjury, wherein she averred the "storage unit was sold in either April or May of 2014." IAF, Tab 20 at 118. On the one hand, she claims she could not access the storage unit following the November 2014 meeting because she was locked out of it until she could pay her outstanding balance. On the other hand, she claims the storage unit had already been sold many months before she purportedly became aware in November 2014 that her 2012 tax return was never received. It is also unclear

---

[4] The appellant testified she fell behind on her storage unit payments because she was in a leave without pay status from October 1 through December 2, 2013, while caring for her mother. HCD (testimony of the appellant).

how she could be so certain about having timely mailed her return, but then not recall that she placed the draft in storage, a step which she testified was her usual practice.

¶12    I would find the foregoing sufficient to overturn the administrative judge's credibility determinations, *see Haebe*, 288 F.3d at 1301, and to find the agency proved charge 1 because, at a minimum, the appellant failed to satisfy her just financial obligations as required under 5 C.F.R. § 2635.809, by failing to timely file her 2012 tax return and continuing to delay in filing for many months after the agency brought the matter to her attention.  As noted by the majority opinion, the parties do not challenge on review the administrative judge's decision to sustain the second charge and to find nexus.  I agree that there is no reason to disturb these findings.

¶13    Where the agency's charges are sustained, the Board reviews the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion "within the tolerable limits of reasonableness."  *Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 9 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).  As our reviewing court has held, "[i]t is well-established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency."  *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987).  Notably, the court stated that "deference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'"  *Id.* (quoting *Villela v. Department of the Air Force*, 727 F.2d 1574, 2576 (Fed. Cir. 1984)).  As I noted in my dissent in *Chin v. Department of Defense*, 2022 MSPB 34, it is clearly not the Board's role to decide what penalty we would impose if we were the deciding officials.

¶14    Here, the deciding official testified that she considered all the *Douglas* factors. PFR File, Tab 1 at 43-44. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, is the most important factor in assessing the reasonableness of a penalty. *See, e.g.*, *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 18. Regarding this factor, the deciding official testified IRS employees are held to a higher standard because "we are the tax collectors" and the agency must be confident that its employees are meeting their obligations regarding the filing and paying of taxes. PFR File, Tab 1 at 38. In her letter of decision, the deciding official stated that among the duties of the appellant's position is assisting taxpayers and responding to their inquiries, and that she was certified to answer such inquiries. IAF, Tab 1 at 10. The deciding official considered that this certification demonstrated the appellant had a clear understanding of when to file personal returns, and also that the appellant was well aware of the requirements of timely and proper filing of returns because the agency frequently reminds its employees of their tax obligations, through annual training, team meetings, and receipt of a document, "Plain Talk about Ethics and Conduct." *Id.*; PFR File, Tab 1 at 40. The deciding official also considered the appellant's past 5-day suspension in September 2006 for failing to properly file her tax return. PFR File, Tab 1 at 36.

¶15    The letter of decision, as supplemented by the deciding official's hearing testimony, demonstrates that she properly considered the relevant factors and reasonably exercised her management discretion. *Lopez v. Department of the Navy*, 108 M.S.P.R. 384, ¶ 22 (2008). Under these circumstances, the agency's penalty determination is entitled to deference.[5] While I am sympathetic to the appellant's situation, I believe that removal was within of the tolerable limits of

---

[5] To the extent that the deciding official erred in finding the appellant's articulated mitigating circumstances neutral, *see* PFR File, Tab 1 at 44, I would nonetheless affirm her penalty determination based on her sound analysis of the foregoing factors.

reasonableness in this case, and that therefore the agency-imposed penalty should not be disturbed.


/s/
_____
Tristan L. Leavitt
Member